## PATTERSON *vs.* CUNNINGHAM.

A conveyance of certain lands and personal property was made by a father to his two sons, they, *verbally* agreeing that after their father's death, they would convey the same property to a sister, or pay her $300 in money.   *Held*, by the Court, that this promise could not be enforced at law, being within that provision of the Stat. of frauds, *ch.* 53, *sec.* 1, requiring contracts for the sale of lands, &c. or any interest in or concerning the same, to be in writing.

The promise being in the alternative, to pay money or convey land, does not exempt it from the operation of the statute.

Nor will a delivery of a portion of the personal property, in execution of the agreement, take the case out of the Statute, the doctrine of *part performance* being confined to courts of equity.

THIS was an action of *assumpsit*, brought to enforce an agreement made by the defendant and a deceased brother, jointly,

with the father of the plaintiff for her benefit. The facts in the case are fully stated in the opinion of the Court.

*Allyn,* for the defendant, contended, 1. That the defendant was excused from the performance of the agreement, it having become impossible by the act of God, in consequence of the death of the defendant's brother, who *jointly* promised with him.

2. The promise was not made to the plaintiff, but to *William Cunningham,* and he would be estopped by his deed to deny the payment of the consideration. *Steele* v. *Adams,* 1 *Greenl.* 1.

3. The promise is within the 1st section of the *Stat.* of frauds. *Pitts* v. *Waugh,* 4 *Mass.* 424; *Dillingham* v. *Runnels,* 4 *Mass.* 400; *Boyd* v. *Stone,* 11 *Mass.* 347; *Sherburne* v. *Fuller,* 5 *Mass.* 133; *Hunt* v. *Maynard,* 6 *Pick.* 489; 15 *Johns.* 503; *Bishop* v. *Little,* 5 *Greenl.* 362.

4. If it is void in part it is void in the whole. 8 *Johns.* 195; 5 *Cowen,* 162; *Sugden on Vendors,* 55.

5. The part performance of the contract does not affect the case. *Kidder* v. *Hunt,* 1 *Pick.* 328; *Freeport* v. *Bartol,* 3 *Greenl.* 340.

*Johnson,* for the plaintiff.

1. An action of *assumpsit* may be maintained by one for whose benefit the promise was made. *Arnold & als.* v. *Lyman,* 17 *Mass.* 400; *Hall* v. *Marston,* 4 *Mass.* 575.

2. The bringing of the action is a sufficient demand. See *Hall* v. *Marston.*

3. Though the consideration related to land, still *assumpsit* may be maintained. *Dearbon* v. *Parks,* 5 *Greenl.* 81.

4. It is of no consequence that this property was a gratuity on the part of the father. *Dutton* v. *Poole, Thomas Jones' Rep.* 102; *Brown* v. *Atwood,* 7 *Greenl.* 356.

5. The promise is not within the statute of frauds, being in the alternative, to pay money or convey land. *Van Auston* v. *Wimple,* 5 *Cowen,* 62. If it were otherwise, it is now relieved from the operation of the statute by *part performance. Maine* v. *Melbourne,* 4 *Ves. Jr.* 720; *Davenport* v. *Mason,* 15 *Mass.* 85; 1 *Com. on Con.* 81.

6.  That the defendant is not relieved from his promise by the death of his brother, cite 4 *Dane's Abr.* ch. 122, art. 2, § 12.

EMERY J. — This action comes before us on exceptions from the Court of Common Pleas, where the Judge, by consent of parties, in order to bring the action before this Court, directed a nonsuit.  From the report of the opening evidence on the part of the plaintiff at the trial, it is apparent that there was an attempt between the father, *William Cunningham*, and his two sons, *Ruggles* and *Thomas*, on the 23d *Sept.* 1830, to make an arrangement for securing to the plaintiff a portion of her father's estate.  To effect this a deed was made by said *William*, of the real estate described in the plaintiff's writ to the defendant and said *Thomas* in fee, for the expressed consideration of $100, and a bill of sale of 2 chains and 3 cows.  Nothing was in fact paid by the grantees, and the whole was to remain in the use and occupation of *William*, during his life, and did so remain.  *Ruggles* and *Thomas* agreed, that after *William's* decease, they would at their election, give to the plaintiff, a deed of the real estate, and deliver her the articles of personal property, or pay her $300.  This sum was to be received in the amount of any articles of household furniture of *William*, which after his decease, said *Ruggles* and *Thomas*, might pay to the plaintiff.  It was intended as a provision by said *William*, by which the plaintiff should obtain a share of her father's estate after his decease, and which was less than her share of that estate.  No writing was signed by said *Ruggles* and *Thomas*, or either of them, and the plaintiff was not present when the agreement was made.  On the 6th of *July*, 1832, *William* died, and two days after, *Thomas* died also.  In *September* following, the plaintiff demanded of the defendant, a conveyance of the real estate, and a delivery of the articles, or the payment of the $300.  The conveyance has not been made.  The defendant, however, saying he was willing to give a deed of his part of the real estate, but some of the heirs of *Thomas*, who were present, refused to convey the part of *Thomas*, because his estate was under administration ; but *Ruggles* delivered the three cows, of the value of $30, and part of the furniture valued at $9,25, but refused to pay the balance. The chains had not come to the hands of the plaintiff or defend-

ant. After the commencement of this action, the defendant told the witness that he would settle with the plaintiff for the aforesaid claim.

If it be true that the defendant did make the engagement, we regret that he has not fulfilled it. How he can reconcile it to his conscience, to withhold from a sister, that which was transferred to him, by their mutual parent, to be conveyed to her, must necessarily be left to his consideration. If, however, he really meant to do what he is said to have engaged, but was prevented by the refusal of the plaintiff to take the half of the real estate, because the defendant could convey no more, nor pay the money, it goes somewhat to relieve him from censure, if we intended any, which is very far from being true. Yet we wonder that he did not make out and tender to the plaintiff, a deed of conveyance of his undivided interest in the land, with warranty against persons, claiming under him ; and we hope that he will yet do so. Certainly the excuse that some of the heirs of *Thomas,* who were present, refused to convey the part of said *Thomas,* because his estate was under administration, was not likely to prove satisfactory in regard to what was within the defendant's power to convey. As the chains never came to his hands, we do not perceive any good ground to implicate him for them, even if there were no other objections to sustaining the suit. But the defendant objects to the incompleteness and insufficiency of the evidence coming from the witness, *Ebenezer Cunningham,* only, to support the action. This objection in point of law, is of a very grave character. To the decision of *Steele* v. *Adams,* he appeals for protection against the claim of the consideration money, which was in the deed acknowledged to have been paid by him and *Thomas* to *William.* The law in this State favors that appeal. The estoppel binds parties and privies.

He further invokes to his aid, the first section of our statute to prevent frauds and perjury, which provides that, " no action shall " hereafter be maintained upon any contract, for the sale of lands, "tenements or hereditaments, or any interest in or concerning the " same, unless the agreement upon which such action shall be " brought or some memorandum or note thereof, shall be in writ- " ing, and signed by the party to be charged therewith, or some

" other person thereunto by him lawfully authorised." *Maine Laws, ch.* 53.

It has been ingeniously argued by the counsel for the plaintiff, that the statute is not justly applicable to the present case, because the promise was in the alternative to convey the land, or pay the money, at the election of the defendant and *Thomas.* And even if it were applicable, that the act of the defendant, in ·delivering the three cows, was in *part performance* of the contract, and takes it out of the objection of the statute of frauds, and that the statement, since the suit, that he would settle with the plaintiff, for her claim, places his liability beyond dispute.

In a comparatively short period after the *statute* of frauds was passed, the case of the *Lord Lexington* v. *Clark and his wife,* was decided in the second year of *Wm. & Mary.* It is reported in the 2*d Ventris,* 223. The action was *assumpsit,* setting forth " that the plaintiff had demised to the former husband of the defendant's wife, lands at the rent of £320 per annum, to hold at will, and that there was due from the first husband £160 for half a years rent, and that he died possessed of the premises. And that the defendant's wife, while sole, and soon after the death of her late husband, in consideration that the plaintiff would permit her to hold and enjoy the premises till lady day next ensuing the decease of her said husband, and permit her to remove divers posts, rails and other things, fixed and placed upon the premises by her said husband, did promise to the plaintiff that she, as well the said £160, that then was in arrear as aforesaid in the life of her late husband, as also £260 more, would well and truly pay ; and shews that she did enjoy the premises by the permission of the plaintiff till lady day aforesaid. And that he suffered her also to take away the things beforementioned, but neither while sole, did she, nor the defendant, or she since her marriage, pay, &c." On *non-assumpsit* pleaded, a special verdict was found, that the wife made the promise, enjoyed the lands, took away the posts, &c. as set forth, and that since, she had paid the £160 to the plaintiff; but had not paid the £260, or any part thereof, and the jury found that said promise, nor any memorandum or note thereof, was not put into writing, or signed by the wife of the defendant, or any person authorised by her to do it ; and they

Patterson *v.* Cunningham.

found that she paid the £160 before the action brought ; and they found the act of Parliament, in 29 *Car.* 2, against fraud and perjuries, whereby it is enacted, that no action should be brought to charge an Executor or Administrator upon any special promise to answer of his own estate, or upon any promise to answer for the debt, default or miscarriage of any other person, &c., unless the agreement, or some memorandum or note thereof were by the person, or some other empowered by him, put into writing, signed, &c.

It was argued for the plaintiff, that although as to the payment of the £160, which was the debt of her, the defendant's late husband, the promise might be void in regard it was not in writing, according to the statute ; yet, as to the payment of the £260 the promise is not within the statute, for that is upon a good consideration, and her own proper debt and damages are only given for that, the £160 is found to have been paid. But by the opinion of all the court judgment was given for the defendant for the promise. As to one part being void, it cannot stand good for the other ; for it is an entire agreement, and the action is brought for both the sums, and indeed could not be otherwise, without variance from the promise. A note is subjoined. It did not appear by the record that the wife was Executor or Administrator to her former husband.

In the year 1797, in the case *Chater* v. *Becket*, 7 *Term Rep.* 197, it was again decided, that a parol promise to pay the debt of another and also to do some other thing, is void by the Statute of Frauds, and that the plaintiff could not separate the two parts of such a contract. And *Lord Kenyon* remarked that, " if the agreement be void, there is an end of the case ; for where there is an express promise, another promise cannot be implied. And he lamented extremely, that exceptions were ever introduced in construing the statute of frauds, and said, " it is a very beneficial statute ; and if the courts had at first abided by the strict letter of the act, it would have prevented a multitude of suits that have since been brought." *Grose J.* observed, " that it was one indivisible contract and the plaintiff cannot recover on any part."

In *Crawford* v. *Morrel*, 8 *Johns. Rep.* 253, where the contract proved was, that the defendant was to pay the plaintiff not

only for land given for the highway but also for a distinct and separate piece of land, it was held, that the latter part of the contract being void by the statute of frauds, the whole, being an entire contract, was void.

This being a promise in the alternative does not relieve the case from the objection. The alternative was at the election of the defendant and *Thomas*, to convey the land and deliver the articles or pay the money. And where an election is to be made in general, it is the duty of the person with whom the election lies to make it in a reasonable time, and give seasonable notice of it. Here it was not to be made till after *William's* death ; and in two days after this event, *Thomas* himself died, and no demand had previously been made of either him or the defendant. This providential occurrence ought not to work injury to the defendant, the survivor. It would be wrong to cast the whole burden on him, when he has but half the land. The contract still concerned an interest in land. 5 *Co. Rep.* 21, *Laughter's Case, Com. Dig. Condition D.* 1. The fact that after the commencement of the suit, the defendant told the witness that he would settle with the plaintiff for her aforesaid claim, we consider furnishes no additional strength to that claim. *Bishop* v. *Little,* 5 *Greenl.* 362.

Nor can we think that the delivery of the three cows is such a part performance as to take the case out of the statute of frauds. The Court of Chancery in *England,* has admitted that it had gone too far in permitting part performance and other circumstances to take cases out of the statute of frauds, and then unavoidably perhaps, after establishing the agreement, to admit parol evidence of the contents of that agreement. 3 *Ves. Jun.* 696, 712 ; *Foster* v. *Hale.* And in *Freeport* v. *Bartol,* 3 *Greenl.* 340, when this position was attempted to be sustained, this court decided that, " the better opinion is that this principle of part performance is applicable to Courts of Equity only."

It is now the settled rule in equity, that although the defendant should answer and admit the agreement as stated in the bill, he may nevertheless protect himself against a performance by

pleading the statute. *Thompson* v. *Todd*, 1 *Peter's C. C. R.* 388; *Elder* v. *Elder*, 1 *Fairf.* 80.

We have not referred to us the declaration in this case upon which we are passing. But we consider the facts detailed in the exceptions, and suppose that the declaration may have been so framed as to be adapted to the facts disclosed. And then the defendant reposes on the formidable protection provided by the statute, because there is no competent evidence to charge him, as there was no note in writing. If the statute be of any value, the evidence on which the plaintiff rested her case is inadmissible. And, together with other cases cited, we apprehend that the case of *Griswold* v. *Messinger*, 6 *Pick.* 517, presents additional authority for our confirming the nonsuit.