## CHRISTOPHER C. RILEY *vs.* W. A. WILLIAMS & wife.

Worcester.  Oct. 3, 1877. — Jan. 30, 1878.  ENDICOTT & LORD, JJ., absent.

In an action on an account annexed for work and labor, the evidence tended to show a special contract, not in writing, by which the plaintiff agreed to do certain work for the defendant, and to receive in payment therefor a lot of land, to be selected by him out of a number of lots owned by the defendant, and blacksmith's work to a stated amount from a firm of blacksmiths; and that the plaintiff, after performing the labor, refused to accept payment as stipulated by the contract. *Held*, that, if the defendant was always ready and willing to convey to him the land at its fair market value, and the firm of blacksmiths was always ready to do the blacksmith's work for him at agreed or reasonable prices, the plaintiff could not rely on the fact that the special contract was not in writing, as required by the statute of frauds. *Held, also*, that the plaintiff could not prove, in this form of action, that, after allowing for the value of a lot and the stipulated amount to be paid in blacksmith's work, there would still be a balance due to him.

In an action on an account annexed for work and labor, the evidence in which disclosed a special contract, not in writing, the plaintiff requested the judge to put several specific questions to the jury, but the judge refused, and directed the jury to return a general verdict. *Held*, that the plaintiff had no ground of exception.

In an action against a husband and wife, the verdict of the jury in the title of the case omitted the words "and wife." *Held*, that it was within the discretion of the judge who presided at the trial to allow the jury, after they had separated, to amend their verdict by adding these words.

CONTRACT, against W. A. Williams and Susan E. Williams, his wife, on an account annexed for work and labor. Answer: 1. A general denial. 2. That the plaintiff did the work under a special contract, by the terms of which he was to take in payment blacksmithing work to a certain amount, and the balance in a building lot to be selected by the plaintiff near a certain street, the lot to be conveyed to the plaintiff by the defendants, in July, 1875.

At the trial in the Superior Court, before *Rockwell*, J., the plaintiff put in evidence a report of an auditor in his favor, and rested his case. The defendants put in evidence tending to show that in 1874 the female defendant owned a large tract of land in Worcester, a part of which she laid out in streets and lots according to a certain plan; that they employed the plaintiff to build one street, called St. Paul's Street, in May, 1874, by day's work, which he completed in June, 1874; that in July, 1874, they employed him to build sidewalks on said street by

day's work at the same rates; that while the sidewalks were being built they employed him to build another street, called St. James Street, by day's work at the same rates, and that the plaintiff agreed to take blacksmithing of Cameron & Emerson to the amount of $400, and a low-priced lot, but that nothing was said as to the price or location of the lot except that it should be one of the lots on the plan; that the defendants afterwards introduced the plaintiff to Cameron & Emerson, and that he then told them he would take $400 in blacksmithing of them; and that Cameron & Emerson agreed with him to furnish the blacksmithing and take their pay in land of the defendants, if the work was furnished them by the plaintiff. It further appeared in evidence that the plaintiff did not take blacksmithing of Cameron & Emerson except to the amount of $5.28, which they charged to the plaintiff to keep it separate from a previous bill they had against the defendants, and which was paid for by him in money; and that the plaintiff had declined to take a lot of the defendants. Cameron and Emerson testified that they were unwilling to furnish any more blacksmithing to the plaintiff and take land of the defendants therefor at the then market value thereof. But they are now willing to take a lot at its present value and pay for it in blacksmithing according to the contract. There was also evidence tending to show that the $400 of blacksmith's work, and any of the lots on the plan taken at its fair market value in July, 1875, did not amount to as much as the plaintiff's claim for building St. James Street, and the evidence was conflicting as to whether the blacksmithing to be taken was $400, or $200, or a less amount. The plaintiff testified that he could not use $400 worth of blacksmithing in five years, and that the amount of $5.28 for blacksmithing was all he used in a month, which evidence was not contradicted.

Upon the above evidence, the plaintiff asked the judge to rule as follows: " 1. That the contract with Cameron & Emerson was void for uncertainty, conditional and within the statute of frauds. 2. That the contract with the plaintiff concerning a lot was void for uncertainty and within the statute of frauds. 3. That the contract as set up in the answer was void for uncertainty and within the statute of frauds. 4. That if the jury believed the contract to be as testified to by the defendants, and

that the blacksmithing and market value of said lot would not together amount to the sum found due by the auditor, they should find for the plaintiff for the difference."

The judge refused so to rule, and instructed the jury as follows : " If the jury are satisfied that the contract for working St. James Street was distinct and subsequent to the contract for working St. Paul's Street, that the plaintiff has been fully paid for St. Paul's Street, both for street and sidewalks, and that the contract for working St. James Street was that the plaintiff should do the work by the day at his usual prices, and to take his pay in part in a lot of Mrs. Williams's land and the rest in blacksmith work of Cameron & Emerson, they agreeing to furnish the blacksmith work, and the jury are satisfied that Mrs. Williams was always ready and willing to make a good and sufficient deed of the lot at its fair market value, and that Cameron & Emerson were always ready to do the blacksmithing for him when called for, at agreed prices, and the plaintiff has made no demand for the lot or the blacksmith work, he cannot recover in this action, though such special contract was not in writing.   For services thus performed the plaintiff is not entitled to recover wages by the day, without proof that the defendants assented to pay the plaintiff by the day.   If the contract was that the plaintiff should take a lot and $400 of blacksmith's work, the lot not being specified, except as one of the lots on the defendants' estate, opened by St. James Street, to be selected by the plaintiff, as the evidence shows those lots were of different values, if the plaintiff has never demanded a lot, but only denied his obligation to take any lot, he cannot prove in this action the value of a lot, so as to show that said value with the blacksmith work would make a sum less than his charges by the day, and so recover the balance in this action ; but, if the special contract is proved, he cannot recover anything under this declaration."

The plaintiff asked the judge to instruct the jury to find the following special verdicts, namely :

" 1. Is that part of the contract set up in the answer proved relative to payment to the plaintiff in a building lot ?

" 2. Is that part of the contract set up in the answer proved relative to payment to the plaintiff in blacksmithing of Cameron

& Emerson ? If yes, how much blacksmithing of Cameron & Emerson was the plaintiff to take in part payment for the plaintiff's work?

" 3. If you find the answers to the above questions affirmatively, what sum is the plaintiff entitled to recover over and above such blacksmithing and building lot ?

" 4. What amount is due in money from the défendants to the plaintiff ? "

The judge refused so to instruct the jury, and directed them to find a general verdict.

The jury returned the following verdict : " In the action C. C. Riley against W. A. Williams the jury find for the defendant." Six days after the jury had separated, the foreman was allowed by the judge, on motion of the defendants, to insert the words " and wife," in the verdict, after the name " W. A. Williams," which was objected to by the plaintiff.

The plaintiff alleged exceptions.

*W. A. Gile*, for the plaintiff.

*F. T. Blackmer*, for the defendants.

AMES, J.   It has been settled by numerous decisions that an action will lie to recover back money paid, or for services rendered, by one party to an agreement which is invalid by the statute of frauds, and which the other party refuses to perform *Kidder* v. *Hunt*, 1 Pick. 328, 331.   *Gillet* v. *Maynard*, 5 Johns 85.   *Gray* v. *Hill*, Ry. & Mood. 420.   *King* v. *Brown*, 2 Hill, 485. *Basford* v. *Pearson*, 9 Allen, 387.   *Williams* v. *Bemis*, 108 Mass. 91.   *Parker* v. *Tainter*, ante, 185.

But the plaintiff does not bring his case within this rule Under the instructions given, the jury must have found that, although the services as claimed by the plaintiff were actually rendered, yet he had agreed that he should be paid in the manner stipulated in an executory contract which the defendants are ready and able to perform.   If he was to be paid partly in a lot of land belonging to the female defendant, and partly in blacksmith's work to be furnished by Cameron & Emerson, and the jury were satisfied that the defendants were ready and willing, at all times, to convey the land, at its fair market value, and Cameron & Emerson were always ready to furnish the blacksmith's work for him when called for at agreed or reasonable

prices, it is not for the plaintiff to object that this special contract was not binding because it was not in writing. It was wholly immaterial that no action could be maintained on this special contract, because it was not reduced to writing, if the defendants were willing and ready at all times to carry it into full effect. The plaintiff cannot force the defendants to take their stand upon the statute. *Coughlin* v. *Knowles*, 7 Met. 57. *Wetherbee* v. *Potter*, 99 Mass. 354, 361.

It is true that it does not appear from the bill of exceptions that there was any specific designation of the lot of land which he was to take. It was to be one of the lots on the plan, and was to be a low priced one, and by " low priced " we understand it was to be at a low rate of price in proportion to its area. He would under such a contract have a right to select any lot answering that description. If he refused to select and demand any lot, and denied that he was bound to take any, he cannot prove in this action that, after allowing for the value of a lot and the stipulated amount to be paid in blacksmith's work, there would still be a balance due to him. The special contract, if proved as alleged, was executory, and, as there is no refusal by the defendants to fulfil it, he cannot recover anything under this declaration.

The questions which the plaintiff desired to have answered by the jury are sufficiently disposed of by the general verdict, and we cannot see that the plaintiff suffered any detriment by the refusal of the judge to require them to be specifically answered.

The ruling of the court, allowing the amendment in the name and description of the cause in the verdict, by adding the words " and wife " after the name of the male defendant, was in conformity to the truth, and wholly a matter of sound judicial discretion. As such, it was not a matter of exception.

*Exceptions overruled.*