## JOHN H. WELSH v. ESTATE OF JULIA WELSH.[1]

### February 11, 1921.

### No. 22,095.

**Limitation of action for price of goods.**

Plaintiff performed services and furnished goods to his mother un-der an oral contract that she would convey to him a farm for a certain price, and if she failed to so do to pay cash for what she had received from him. She died without having tendered a deed. It is *held*:

(1) By her failure to avail herself of the option or alternative en-gagement while she had the opportunity, the obligation to pay cash became fixed at her death, and the cause of action on the contract then accrued. The part of the contract relating to real estate and affected by the statute of frauds was thereby eliminated.

(2) The statute of limitations does not bar any item involved in the suit.

Action in the district court for Redwood county to recover $1,567.75 against the estate of Julia Welsh. The facts are fully stated in the opinion. The case was tried before Olsen, J., and a jury which re-turned a verdict for $596.22. From an order denying his motion for a new trial, plaintiff appealed. Reversed.

*Albert H. Enersen,* for appellant.

*Erickson & Loomis,* for respondent.

HOLT, J.

John H. Welsh filed a claim against the estate of his mother, Julia Welsh. It was allowed in part, and an appeal taken to the district court, where pleadings were framed and the cause tried to a jury. There was a verdict for plaintiff for a part only of the claim, and he appeals from the order denying a new trial.

The substance of the complaint is that plaintiff's mother owned an 80-acre farm adjoining his in Redwood county; that after the death of his father plaintiff furnished material and property and performed serv-ices for his mother at her instance and request to the value of $1,567.75;

[1]Reported in 181 N. W. 356.

that while this was being done it was agreed between them that, at such times as would be convenient to both, his mother should and would convey to him the said 80-acre farm at the agreed price of $40 per acre, and plaintiff to have credit for the full value of all of said services performed and material provided up to the time of the conveyance; "that in case of the failure of the said mother to make said conveyance to this plaintiff the value of said personal property and of said services were to be paid by said Julia Welsh to this plaintiff in cash;" that, in pursuance of this agreement and depending thereon, plaintiff performed the services and furnished the property as stated in the account attached to the complaint; that his mother failed to convey the land prior to her death and did not pay for the services or property, and that plaintiff is ready and willing to complete the transaction. He asks judgment for $1,567.75, and interest since April 11, 1917, the date of his mother's death. The defense was a general denial; a plea of the statute of limitations as to the items of the account antedating April 11, 1917, and that the contract alleged was void under the statute of frauds. The learned trial court ruled that recovery under the pleadings was limited to items performed and furnished within the six years immediately prior to the death of Mrs. Welsh. This raises the principal question of the appeal.

During the trial plaintiff moved to amend the complaint by enlarging the clause above quoted by adding thereto the words "or by her estate after her death." This was denied. The motion was not made until plaintiff rested. The amendment of pleadings during the trial is almost wholly within the control of the trial court, and we think there was no abuse of discretion in the ruling, particularly because of the tardiness of the application to amend, this being the second trial of the cause in the district court.

It is urged that, had the agreement pleaded been in writing, duly signed by the parties, it would have been of no binding force. This may be conceded as respects the land, for there is no unconditional promise to convey, but there is alleged express agreement on the part of the mother to pay cash for the services performed and goods furnished in case she failed to deed. Laying out of consideration for the present the effect of the statute of frauds, we think the contract may not be ignored

or held for naught because of indefiniteness or want of mutuality. When plaintiff proceeded under it to render services and furnish goods to his mother, he impliedly agreed to accept the conveyance and pay whatever balance there might be in her favor when the time for giving the deed arrived, or, in case of failure to convey, to accept cash. That no definite time was fixed for performance cannot be fatal to the contract. The situation and relation of the parties explains why that was not deemed important. The extent to which the mother might desire her son's assistance could perhaps not be foretold, and, the longer he continued to render services, the less would be the amount that he would be required to pay in cash when he came to receive the deed. Hence the parties left the date of the final act of the agreement to their future mutual convenience. This does not invalidate the whole agreement, plaintiff having fully performed. That indefiniteness as to the time of some feature of a contract does not render it invalid, see Lankton v. Stewart, 27 Minn. 346, 7 N. W. 360; Tingue v. Patch, 93 Minn. 437, 101 N. W. 792; Veum v. Sheeran, 95 Minn. 315, 104 N. W. 135; Seigne v. Warren Auto Co. 147 Minn. 142, 179 N. W. 648. The evidence tends to show that Mrs. Welsh, as long as she lived, recognized the contract as in force, and she wished to convey at the first convenient opportunity. In the nature of things there would necessarily come a time when the payment in cash fell due, namely, in case of the mother's death without a conveyance having been tendered.

So far as this contract embodies a promise to convey land, it is void. And, if this were solely a case of recovery for what had been paid because a conveyance cannot be had, the contract could not be considered at all, except for the purpose of showing that the payments were not gratuitous, or, in case of services, that they were not likewise. Martin v. Martin's Estate, 108 Wis. 284, 84 N. W. 439, 81 Am. St. 895; Loper v. Sheldon's Estate, 120 Wis. 26, 97 N. W. 524. That is, the action would necessarily be upon an implied contract for money had and received, and no recovery could be had for what was furnished more than six years prior to the suit. Jorgenson v. Jorgenson, 81 Minn. 428, 84 N. W. 221.

But it seems to us that the contract here under consideration is separable or divisible, it being in the alternative as far as concerned the

part to be performed by the mother. In Burns v. Fidelity Real-Estate Co. 52 Minn. 31, 53 N. W. 1017, the plaintiff delivered brick at $7 per thousand, and was to take in payment a lot at a certain price and the balance in cash. The court held the contract void, not being in writing, but permitted the judgment to stand for all brick delivered at the price named, except for the amount which made up the price at which the lot was to be taken. The contract here involved seems more readily divisible, it being in the alternative. The mother had the option to discharge the obligation for the services or goods received by deeding the land. She failed to pay in land while able to exercise that alternative; it then dropped from the contract by her choice, or failure to elect, and a valid express agreement to pay in cash remained. From Parsons, Contract, *651, we quote:

"If the promise be to pay money at a certain time, or deliver certain chattels, it is a promise in the alternative; and the alternative belongs to the promisor. He may do either the one or the other at his election; nor need he make his election until the time when the promise is to be performed; but after that day has passed without election on his part, the promisee has an absolute right to the money, and may bring his action for it."

And in the same volume *657: "If one branch of an alternative becomes impossible, so that the promisor had no longer an election, this does not destroy his obligation, unless the contract expressly so provide, but he is now bound to perform the other alternative."

These statements were not made in respect to contracts in part within the statute of frauds. But the rule stated would seem to render this contract divisible. See also Fitzhugh v. Harrison, 75 Minn. 481, on page 487, 78 N. W. 95. In Rand v. Mather, 11 Cush. (Mass.) 1, 59 Am. Dec. 131, overruling Loomis v. Newhall, 15 Pick. 159, the court says:

"If any part of an agreement is valid, it will avail *pro tanto,* though another part of it may be prohibited by statute; provided the statute does not, either expressly or by necessary implication, render the whole void; and provided, furthermore, that the sound part can be separated from the unsound, and be enforced without injustice to defendant."

Here no injustice results to the other side from separating the land

from the rest of the contract, in fact, Mrs. Welsh so did by omitting to deed the land while she could, thereby that alternative is gone, and her engagement is narrowed down to the promise to pay cash for what she received. This absolute promise to pay cash did not arise so long as she had the opportunity of availing herself of the alternative. Death cut off this opportunity for giving a deed, and fixed the time when the cause of action alleged in the complaint accrued.

We do not overlook the fact that a noted author and a few courts have announced a rule in respect to oral agreements in the alternative, one of the alternatives relating to land, different from the one we adopt. Browne, Statute of Frauds, § 152, says:

"It is manifest that of such alternative engagements no action will lie upon that one which, if it stood alone, could be enforced as being clear of the statute of frauds, because the effect would be to enforce the other, namely, by making the violation of it the ground of an action."

The cases cited in support of the text, and those we have found, are hardly in point, except Mather v. Scoles, 35 Ind. 1; Patterson v. Cunningham, 12 Me. 506; Howard v. Brower, 37 Oh. St. 402. The Maine case has the feature that the defendant owned only an undivided half of the land involved, and was not free to choose. The authority of the Ohio case is much weakened by the able dissenting opinion of Justice Johnson, which seems grounded on a sound basis. In Mercier v. Campbell, 14 Ont. Law, 639, Justice Riddell goes fully into the English and American authorities and reaches the conclusion that the rule stated by Browne is wrong in principle.

It is contended in behalf of the respondent that the contract was altogether void, so that, had plaintiff sued his mother in her lifetime for the reasonable value of the items furnished, she would have had no defense. Therefore, a cause of action accrued as each item was furnished. We do not think that is true. Neither law nor morals forbid the making or keeping of oral contracts, even though pertaining to land. Hence had plaintiff, after rendition of the services, sued on an implied promise to pay, his mother, no doubt, could have defended successfully by alleging the contract and her readiness to perform pursuant thereto. Such a case was presented in Riley v. Williams, 123 Mass. 506, and it was held that if the plaintiff therein was to be paid for services partly in

land, and partly by blacksmith work, under an oral contract void under the statute of frauds, and the defendant was ready to perform his part, the plaintiff could not recover on an implied contract. The plaintiff could not invoke the statute of frauds for the defendant. In McKinney v. Harvie, 38 Minn. 18, 35 N. W. 668, 8 Am. St. 640, the plaintiff sought to recover back money paid under an oral contract to purchase a lot, and it appeared that the defendant had tendered a conveyance. The court said:

"It is not material that the contract was by parol, and within the statute of frauds. The purchaser cannot recover moneys paid under it if the defendant was not in default."

See also Sennett v. Shehan, 27 Minn. 328, 7 N. W. 266. This shows that a cause of action did not accrue to plaintiff herein, until his mother refused to abide by the agreement. This she never did while living. Under the aspect hereinbefore taken of the contract, the amendment of the complaint, asked and denied at the trial, was not needed. The statute of limitations did not begin to run against any item furnished under the contract until the death of Mrs. Welsh, and cases like In re Hess' Estate, 57 Minn. 282, 59 N. W. 193; Lovell v. Beedle, 138 Minn. 12, 163 N. W. 778; and Wagner v. Seaberg, 138 Minn. 37, 163 N. W. 975, are applicable.

No other assignment of error need be considered. There is nothing in the point that, because of certain cross-examination of plaintiff in the probate court, when this claim was heard, he was permitted to testify as to conversation with his mother, the door is permanently opened to him for such testimony in any subsequent trial.

Order is reversed and a new trial granted.