# No. 12,921.

## WARD *v.* WARD.
### (30 P. [2d] 853)

Decided February 5, 1934.

276

 

Mr. A. X. Erickson, Mr. Emory L. O'Connell, for plaintiff in error.

Mr. Henry E. May, for defendant in error.

*En Banc.*

Mr. Justice Butler delivered the opinion of the court.

Andrew Calvin Ward sued Estelle B. Ward, as trustee, and Don F. Cowell, as administrator with the will annexed of the estate of Calvin Tracy Ward, deceased. After the evidence was in, the court directed a verdict for the defendant, and upon the coming in of the verdict rendered judgment thereon. Thereafter Cowell resigned and Estelle B. Ward was appointed administratrix. To reverse that judgment this writ is prosecuted. The parties will be referred to as they were aligned in the district court.

The plaintiff sued for damages for breach of contract. In his complaint the plaintiff alleged that in 1892 and thereafter he advanced money to his father, Calvin Tracy Ward, thereby assisting him to establish and conduct a second-hand furniture and auction business; that in 1897 his father offered to devise and bequeath to him by his last will and testament not less than one-fourth of all real estate and personal property of which the father might die seized, including all gifts or advances to heirs and others as charges in computing the amount to be so

devised and bequeathed, *or* to bequeath to the plaintiff by his last will and testament an amount of money equal to not less than one-fourth of the value thereof, if the plaintiff would forgive his father's indebtedness to him, and would work for his father in said business at a nominal wage so long as the father continued in that business; that the plaintiff accepted the offer; that neither the offer nor the acceptance was in writing; that the plaintiff performed his part of the agreement; that his father failed to perform his part thereof, but bequeathed to the plaintiff the sum of one dollar only; and that the value of his father's estate plus gifts and advances is $600,000. The defendants' answer, after denying certain averments, pleaded the statute of frauds, and also defenses that we need not consider.

1. Counsel for the defendants says that the complaint fails to state a cause of action because it does not allege that the father was engaged in the second-hand furniture and auction business at the time of making the offer, or that he agreed to engage in that business. Although the complaint in this respect may not be all that could be desired, it reasonably appears from its allegations that the father did engage in that business with money furnished in part by the plaintiff, and that the plaintiff entered his father's employ and fully performed his part of the agreement.

2. Another contention is that the complaint does not state a cause of action because it does not state what the plaintiff contracted to do, how much or when work was to be done, or its value. We think that the complaint is not subject to a general demurrer for that reason, but should have been attacked (if subject to attack) by special demurrer or by motion to make the complaint more specific and certain. In *Calhoun v. Girardine,* 13 Colo. 103, 21 Pac. 1017 (1889), cited by counsel for the defendants, the complaint was on a contract for assessment work on a mining claim. There was "an attempted" allegation of performance, but no statement of

278

acceptance by the defendant, or of the value of the work done. That case is not applicable here. The agreement to compensate the plaintiff for his services to be rendered in the business in which the father intended thereafter to engage was a binding agreement even though it did not specify in detail the particular services to be rendered. The plaintiff fully performed his part of the agreement; his services were rendered and accepted. In such a situation it would be grossly unjust to permit the father or his representative to escape liability by reason of the fact that the agreement was not more specific as to the services to be rendered.

The terms of a contract need be expressed only "with a reasonable certainty, and what is reasonable in any case must depend upon the subject-matter of the agreement, the purpose for which it was entered into, the situation and relations of the parties, and the circumstances under which it was made. A *greater amount or degree of certainty is required* in the terms of an agreement, which is to be specifically executed in equity, than is necessary in a contract which is to be the basis of an action at law for damages. An action at law is founded upon the mere nonperformance by the defendant, and this negative conclusion can often be established without determining all the terms of the agreement with exactness." Pomeroy's Specific Performance of Contracts (3d Ed.), §159. The present action is one at law for damages for breach of contract. See, also: *Oles v. Wilson,* 57 Colo. 246, 141 Pac. 489; *Work v. Welsh,* 160 Ill. 468, 473, 43 N. E. 719, 722; *Welsh v. Welsh's Estate,* 148 Minn. 235, 181 N. W. 356. In the Oles case we quoted with approval the following language found in the opinion in *Wilson v. Furness Ry. Co.,* 9 L. R. Eq. Cases, 28, 33: "It would be monstrous if the company, having got the whole benefit of the agreement, could turn round and say, 'This is the sort of thing which the Court finds a difficulty in doing, and will not do.' Rather than allow such a gross piece of dishonesty to go unredressed, the

Court would struggle with any amount of difficulties in order to perform the agreement.''

3. Another contention of counsel for the defendants is that the agreement was not binding because the father did not expressly agree not to revoke the will. This contention also is without merit. In *Craig's Estate,* 298 Pa. St. 235, 148 Atl. 83, relied upon to sustain the contention, the rule is stated thus: ''The mere fact of a promise to make a will in appellant's favor would not be sufficient; it would have to appear that testator also expressly agreed not to revoke it, or that the character of the transaction was such that an agreement to that effect must necessarily be implied therefrom.'' In the present case the agreement was, not merely to make a will, but that the father should devise and bequeath property to the plaintiff by his *last* will and testament, etc. No matter how many wills the father should make and revoke or change, the agreement obliged him to devise and bequeath, by his *last* will and testament, property to the plaintiff. The character of the transaction was such as to negative any right of the father to avoid the obligation to make a final will in accordance with his agreement.

4. Still another contention is that the agreement is void as against public policy, because, so it is said, under its terms the widow would be deprived of her right of inheritance of one-half of the husband's estate secured to her by sections 5151 and 5184 of the Compiled Laws. But under the latter section the husband cannot devise or bequeath away from the wife more than one-half of his property without her written consent executed after his death. If it should appear at the trial that one-fourth of the value of the father's estate plus the gifts or advances made to heirs and others exceeds one-half of the property owned by the father at the time of his death, the plaintiff's right would be subject to the widow's right to her statutory share of one-half of the estate. The agreement could not deprive the widow of her statutory right.

■■ 5. The plaintiff offered evidence to prove the contract, full performance by plaintiff for some twenty-two years up to the time of his father's death, the breach of the contract by his father, and the value of the father's property, including all gifts and advances. The trial court excluded the evidence on the ground that the agreement did not comply with the requirements of the statute of frauds and therefore was void. We think that in so holding the court erred.

(a) A contract to devise land is within the statute of frauds, whereas a contract to bequeath money is not. *Wellington v. Apthorp,* 145 Mass. 69, 73, 13 N. E. 10. In the contract before us the father agreed to do one of two things, not to do both; (1) to devise and bequeath to the plaintiff not less than one-fourth of all real estate *and* personal property of the father, *or* (2) to bequeath to the plaintiff an amount of money equal to not less than one-fourth of the value of such property. The first of the alternative promises, which relates to real estate *and* personal property, is a unit and indivisible; and, being void as to the real estate, is void in its entirety. *Fuller v. Reed,* 38 Cal. 99. If promises 1 and 2 are divisible, promise 2 is enforceable, notwithstanding the invalidity of promise 1. If promises 1 and 2 are indivisible, neither promise is enforceable. If the primary and principal purpose of the contract were to devise and bequeath real estate and personal property and, if such contract is breached, to pay a sum of money as a penalty or liquidated damages, the contract would be indivisible. But promise 1 was not the primary or principal purpose, and promise 2 merely secondary and to arise only upon breach of the former, but both promises were of equal importance and are divisible. The father had the option to do one or the other, but he did neither.

In our former opinion we held the two promises divisible. Counsel earnestly challenges that holding and cites cases that, as he believes, conclusively show that the promises are indivisible. We shall discuss those cases.

Among the cases cited by counsel as "decisive" in his favor is *Horton v. Stegmyer,* 175 Fed. 756. That case does not bear out counsel's claim. There, the decedent promised to provide for another by will "to the extent of one-half in value of his property." That means, of course, to will one-half of his *property,* measured by its value, not to bequeath *money* in amount equal to one-half of the value of his property. The court said: "But this was a contract of sale of real estate, for the bill discloses the fact that Horton's estate consisted of real property." The promise unquestionably was void under the statute of frauds, and it was so held.

*Gould v. Mansfield,* 103 Mass. 408, *Swash v. Sharpstein,* 14 Wash. 426, 44 Pac. 862, *Fuller v. Reed,* 38 Cal. 99, *Cavanaugh v. Cavanaugh,* 120 Wash. 487, 207 Pac. 657, *Martin v. Martin's Estate,* 108 Wis. 284, 84 N. W. 439, *Pond v. Sheean,* 132 Ill. 312, 23 N. E. 1018, *Wallace v. Long,* 105 Ind. 522, 5 N. E. 666, *Loper v. Estate of Sheldon,* 120 Wis. 26, 97 N. W. 524, *Dicken v. McKinley,* 163 Ill. 318, 45 N. E. 134, and *Duteil v. Mullens,* 192 Ky. 616, 234 S. W. 192, did not deal with alternative promises. The several promises involved in those cases were to devise and bequeath all or a certain portion of the decedent's estate, both real and personal; or a portion of the decedent's entire estate, which consisted of both real estate and personal property; or all of the decedent's estate, consisting mainly of real estate; or the bulk of the decedent's property, which consisted largely of real estate; or to sell and convey real estate *and* personal property; or to make no will and to let an adopted child inherit, as an heir at law, property both real and personal. Such promises, of course, were held to be a unit and inseparable and therefore void under the statute of frauds. It is obvious that those cases do not conflict with our decision in the case at bar, but, on the contrary, are in harmony with our holding that the first of the alternative promises, namely, to devise and bequeath not less than one-fourth of all real estate *and* personal property,

etc., is a unit and indivisible and void under the statute of frauds.

*Gernhert v. Straeffer's Executor,* 172 Ky. 823, 189 S. W. 1141, and *Mather v. Scoles,* 35 Ind. 1, are distinguishable from the present case. In those cases the promises were such as to indicate that the devise or conveyance of land was the primary purpose of the agreement, and that money was to be paid only in case of failure to perform the promise to devise or convey the land. Farther on we shall cite an authority concerning the law applicable in such a situation.

*Wolfskill v. Wells,* 154 Mo. App. 302, 134 S. W. 51, comes nearer the point, but the court thus describes the situation involved in that case: "If we were to allow plaintiff to succeed in his effort to prosecute this action as a mere account for the value of a half interest in land conveyed to defendant's intestate, at a stated price per acre; if we should allow him to disconnect the case from its trust character, he would still be without legal standing. The verbal contract was one in the alternative to convey to George W., Jr., one-half interest in the land, or, at his option, to *pay him* $35 per acre *for such interest.* As made, it was an inseparable contract."

Of all the cases cited by counsel, only three seem to be in point; namely, *Patterson v. Cunningham,* 12 Me. 506, *Howard v. Brower,* 37 Ohio St. 402, and *Andrews v. Broughton,* 78 Mo. App. 179.

In the Patterson case, supra, W. deeded real estate to his two sons, R. and T., who agreed orally that on W.'s death they would give to the plaintiff a deed of the real estate and deliver to her certain articles of personal property, or pay her $300; said $300 "to be received in the amount of any articles of household furniture of W., which after his decease" R. and T. "might pay to the plaintiff." In holding that the entire contract was within the statute of frauds, the court relied upon cases that do not support the contention that the promises in the case at bar are indivisible. For example, in *Lexington v.*

*Clark,* 2 Ventries 223, *Chater v. Becket,* 7 Term R. 197, and *Crawford v. Morrell,* 8 Johns. 253, the promise was to do two things (not in the alternative), one within and one without the statute of frauds. That early Maine case (1835) was followed in *Howard v. Brower, supra,* where the court also cited as applicable *Fuller v. Reed, supra,* where the contract was in the conjunctive, to pay money *and* convey land.

In the Howard case Justice Johnson, in a dissenting opinion, points out the distinction between divisible and indivisible promises and reviews the authorities. He thus states the reason for the rule: "The reason for the rule is, not because the statute of frauds happens to apply to one stipulation, but because on its face the contract shows it was the intention of the parties that the whole contract should be performed, in other words, that it is not divisible. When the reason of the rule ceases, the rule itself ceases. In the case at bar the intention was not to pay *twice, nor* to do *two* things—pay in land *and* money, but in one *or* the other, at his election, to the amount of ten thousand dollars. If one alternative was not enforceable, the other was. To allow Kugler's estate to escape liability on this contract on the ground that the option he reserved to pay in land was not enforceable, because not in writing, is making the statute an engine of fraud, rather than a means of preventing it."

In the Andrews case the court followed Browne on Statute of Frauds, section 140, *Patterson v. Cunningham, supra,* and *Howard v. Brower, supra;* and cites as applicable *Fuller v. Reed, supra,* where, as we have seen, a contract to pay money *and* convey land was held to be indivisible.

Such are the cases relied upon by counsel for the defendants.

It may be added that in *Howard v. Brower, supra,* the court quoted as applicable the following statement in Browne on Statute of Frauds, section 152: "It is manifest that of such alternative engagements, no action will

lie upon that one which, if it stood alone, could be enforced as being clear of the statute of frauds, because the effect would be to enforce the other; namely, by making the violation of it the ground of an action.'' Only four cases are cited in support of the text; *Van Alstine v. Wimple,* 5 Cowen (N. Y.) 162, *Patterson v. Cunningham, supra, Goodrich v. Nickols,* 2 Root (Conn.) 498, and *Rice v. Peet,* 15 Johns. (N. Y.) 503. We have discussed the Patterson case, and have called attention to the fact that the cases cited by the court do not sustain the holding. In the Van Alstine case the plaintiff deeded land to the defendant for $600. The defendant paid $200 down. The plaintiff was to have two years to redeem by repaying the $200, and the defendant agreed that if the plaintiff did not redeem the defendant would pay to the plaintiff $400, the balance of the price. The plaintiff did not redeem but sued for the $400. The court held that the contract was within the statute of frauds and unenforceable. In the Goodrich case, decided in 1797, the contract was to convey land or forfeit £100. It was held, of course, that the contract to convey land, being oral, was void under the statute of frauds, and that no action to recover the penalty would lie. In the Rice case a promissory note was given in pledge, on an oral agreement to exchange farms, to be forfeited unless the agreement was fulfilled. The court held that no action on the note would lie.

There is no sound reason why promises 1 and 2 in the contract before us should be held to be indivisible. They are naturally separable, and holding them to be divisible would cause no injustice to anyone. Reason and the weight of authority uphold the proposition that the promises are divisible, and that one is enforceable though the other is not.

In 2 Parsons on Contracts (9th Ed.), *651, it is said: ''If the promise be to pay money at a certain time, or deliver certain chattels, it is a promise in the alternative; and the alternative belongs to the promisor. He may do either the one or the other, at his election; nor

need he make his election until the time when the promise is to be performed; but after that day has passed without election on his part, the promisee has an absolute right to the money, and may bring his action for it.'' And at star page 657 of the same work the author says: ''If one branch of the alternative becomes impossible, so that the promisor has no longer an election, this does not destroy his obligation, unless the contract expressly so provide; but he is now bound to perform the other alternative.''

And Williston, in his work on contracts, section 498, thus states the law: ''Where a promise is in the alternative, the contract is not within the statute if either alternative can be performed within a year, though the other cannot be; unless at least performance of one alternative is not contemplated except in consequence of a breach of the main promise which forms the other alternative and which the parties contemplate shall be carried out.''

In *Rand v. Mather,* 11 Cush. (Mass.) 1, an oral contract, one part of which was within the statute of frauds and the other not, was held divisible, the latter part being enforceable. The court said: ''On principle, and according to numerous modern adjudications, the true doctrine is this: If any part of an agreement is valid, it will avail *pro tanto,* though another part of it may be prohibited by statute; provided the statute does not, either expressly or by necessary implication, render the whole void; and provided, furthermore, that the sound part can be separated from the unsound, and be enforced without injustice to the defendant.''

In *Ridgely v. Clodfelter,* 43 Ill. 195, C. conveyed land to R. on condition that R. should either convey one-half of the land to C.'s son or pay the son a sum of money. The son sued R. to enforce the contract, and R. pleaded the statute of frauds. The court said: ''In thus setting up the statute of frauds against that portion of the agreement relating to a conveyance of an undivided half of the land, he may very properly be considered as exercising

his option not to perform that portion, and this left the court at liberty, for the purpose of administering complete equity, to state an account between the parties, and decree the payment of the $800, less a moiety of the debts paid. The proof is very clear, that he was either to pay money or convey one-half the land. As to the latter, he says, if such agreement was made it is not binding. The court thereupon decrees, that he shall perform the other branch of his agreement. Substantial justice has been done, and we are not inclined to reverse the decree.''

In *Welsh v. Welsh's Estate, supra,* a mother orally agreed that she would convey a farm to her son, or, if she failed to do so, would pay him money. The court held that the promises were divisible, and that the promise to pay the money was enforceable notwithstanding the promise to convey the land was within the statute of frauds.

In *Mercier v. Campbell,* 14 Ont. L. R. 639, the court reviewed the American and English cases, and held alternative promises in a contract divisible, and the contract enforceable as to the part not within the statute of frauds. The contract was for the sale and purchase of land, and provided that if either party refused to perform he would pay a sum of money.

In the Welsh and Mercier cases, supra, the performance of the promise to pay money seems not to have been contemplated except in consequence of a failure to perform the other promise. Thus there was a closer connection between the two promises than in the present case. See quotation from Williston, supra. We need not, and do not, go so far in our holding in this case.

We hold that promises 1 and 2 in the contract before us are divisible, and that promise 2 is enforceable though promise 1 is not.

(b) But counsel for the defendants contends that even though the two promises are divisible, the promise to bequeath money is within section 5111 of the Compiled Laws (statute of frauds), and therefore unenforceable.

To show how lacking in merit such contention is it should be sufficient to call attention to the fact that that section applies only to contracts for the sale of goods, chattels and things in action, for the price of fifty dollars or more. We add that a contract to bequeath money is not within the statute of frauds. *Wellington v. Apthorp, supra.*

Our former opinion was short. Its brevity misled counsel for the defendants into supposing that the cases relied upon by him had not been given careful consideration. In this opinion, therefore, we have discussed the cases at length, so that it may be known that they have not been overlooked. The case was decided first in department. Upon rehearing we have considered it en banc and have arrived at the same result.

The judgment is reversed, and the cause is remanded for a new trial.

MR. JUSTICE BOUCK dissents.

The former opinion is withdrawn.