PHILIP J. KRUMHOLZ AND ANOTHER, *d. b. a.* THE KRUM-
HOLZ COMPANY, v. GLADES RUSAK.[1]

February 3, 1950.

No. 35,022.

[1]Reported in 41 N. W. (2d) 177.

*Levine & Levine,* for appellant.

*E. T. Haugland* and *Ervin & Lundquist,* for respondents.

LORING, CHIEF JUSTICE.

Action for damages for the violation of an alleged contract. The jury returned a verdict of $870 in favor of plaintiffs. Defendant appeals from the order denying her alternative motion for judgment or a new trial. We consider only the portion of the order denying a new trial, since defendant was not entitled to move for judgment notwithstanding the verdict because of her failure to make a motion for a directed verdict at the close of the evidence. M. S. A. 605.06 and cases cited in the notes; 3 Dunnell, Dig. & Supp. § 5079.

Plaintiffs rely on a contract entered into between defendant and The Krumholz Company for the purchase and installation of two hot-water boilers and two conversion gas burners in the basement of one of defendant's buildings.

August 21, 1946, plaintiff Philip Krumholz visited defendant at her home to discuss the sale of heating equipment which he had heard she was planning to buy. She told him she was in the market for automatic heat for some apartments she rented in a building which she owned next door to her home. He looked over the building, which contained a store on the first floor and two apartments upstairs, for which the heat was to be supplied. He made the necessary measurements and checked the radiation in order to quote defendant a price. In the evening of August 22, 1946, he called on defendant at her home and told her that they would deliver the hot-water boilers and conversion burners and would commence installation as soon as they received the gas company's O.K. to go ahead. Defendant thought that the price was a little high, so Philip agreed to reduce it by $20 for cash if she would pay the

contract price as soon as the job was finished. He testified that this was agreed upon.

Philip drew up a contract order blank (plaintiffs' exhibit A),[2] which he testified that defendant signed in the presence of her husband. Defendant contends that she did not sign the order blank because she did not know "what day he is going to put it in the gas," and, furthermore, being unable to write, that she usually signed her name with an "X." When her husband came to testify, he stated that he was the one who signed the order blank and that he did so without her authorization or consent. Be that as it may, there was ample evidence to support the jury in finding that de-

---

[2]"Office Copy        Order Blank        No. 1068
The Krumholz Co.
GasOrOyle Burner Co.

4455

3113 Emerson Ave. No.        Cherry -2507-

Minneapolis, Minn., 8/22, 1946.

Name, Mrs. Gladys ~~Gledys~~ Rusak
Address, 2425—4 St. N.E.

Terms: Cash $........        Contract $1420.00

Salesman, P.J.K.

This order subject to approval of the GasOrOyle Burner Co. All merchandise guar. for one year.

| Item | Amount |
|---|---|
| 2 Hot Water Boilers | |
| 2 Conversion Gas Burners | |
| Each Boiler Separate | |
| to front & Rear flat | |
| & all Pipes Covered | |
| at Store 2427 4st No | |
| Total | 1420.00 |
| Down Payment, Discount for cash | 20.00 |
| Balance | 1400.00 |

Customer's Signature — Mrs. Glades Rusak"

fendant signed her name to the order blank or that her husband did so with her authorization.

There is also evidence tending to prove that on September 6, 1946, defendant gave plaintiff Robert Krumholz a key to the basement of the store building and accompanied him and three of plaintiffs' employes while they carried down the two boilers which had been left by the wholesale house in the front of the building.[3] September 13, defendant received a permit from the inspector of buildings of Minneapolis to install two hot-water heating units. November 13, 1946, she received two cards from the Minneapolis Gas Light Company, authorizing her to install the gas-heating equipment. As soon as defendant received these cards, Robert Krumholz went to defendant's home and told her that they could go ahead with the installation, but she did not want him to do so until the coal which she had on hand was used up.

In the early part of December 1946, the gas company cancelled all installation cards that had been issued, except those for work which had progressed to a point where the burners were ready to be installed. On learning this, Robert Krumholz told defendant that by placing the gas burners in the boilers they might be able to procure the gas company's permission to finish the job. Defendant agreed. Robert placed a conversion burner in each boiler, but the gas company did not give its approval at that time. On March 11, 1947, defendant received two more cards from the gas company, authorizing her to install the heating equipment. Philip Krumholz then went to see defendant about completing the installation, but she refused to let plaintiffs go on with the work.

[3]Defendant contends that she tried to prevent them from setting up the boilers and that she and her husband went to plaintiffs' office and told Robert to take them back, because she had not signed the contract. At the trial, defendant submitted a copy of the order blank, which she admitted she received on August 22. If her claim is true that she did not sign the order blank and that her husband signed without her authorization, express or implied, it seems most unlikely that she would have waited 15 days, while plaintiffs went ahead with the contract, before letting them know of her objections.

At the trial, plaintiffs testified that the cost of installation would run about $550, so the complaint was amended accordingly to ask for $870 damages instead of $1,420.

The questions presented by this appeal relate to (1) the admission of the original unverified answer; (2) a hypothetical question put to Robert Krumholz; (3) the court's refusal to give an instruction requested by defendant; and (4) the granting of plaintiffs' motion to amend the complaint at the close of plaintiffs' testimony.

■ Defendant contends that the court erred in permitting plaintiffs' attorney to put in evidence defendant's original unverified answer, in which her former attorney admitted making the contract and asked for rescission on the ground of false representation. When the case came to trial, her present attorney moved to amend the answer to make it a denial of any contract between the parties. Plaintiffs made no objection, and it was so amended. Defendant argues here that the original answer, which was offered by plaintiffs, was inadmissible to impeach defendant's testimony. In Carlson v. Fredsall, 228 Minn. 461, 37 N. W. (2d) 744, we reviewed the various authorities on this question and concluded that an unverified pleading was admissible, although the party against whom it is admitted for the purpose of impeachment may show that he did not have knowledge of its contents. Such proof goes to the weight of the evidence, not to its admissibility. The trial court properly admitted defendant's original answer in this case.

■ During the course of Robert Krumholz's direct examination, he was allowed to answer the following hypothetical question over defendant's objection.

"Q. Have you an opinion as to whether or not, if the contract had been completed by you and your father, whether this equipment would have functioned satisfactorily, and each unit would have properly heated the apartment which you proposed to heat?

"Mr. Levine: Objected to as calling for a conclusion of the witness; no proper foundation laid.

"Mr. Ervin: Well, he has been in the business ten years.

"The Court: Objection overruled, he may answer.

"A. Without any doubt at all, that would have performed the function it was intended to."

Defendant contends that the question constituted reversible error because it assumed facts not in evidence. His position is not tenable. Immediately before the hypothetical question was asked, the following testimony was given without objection.

"Q. I will ask you this question: Were these two hot water boilers and two conversion burners, which were delivered in the basement of this building—were those suitable for the purpose for which they were intended?

"A. Yes, sir."

We think the foundation was adequate. It appears in the record that substantially the same hypothetical question was asked and answered by Philip Krumholz without objection. The evidence was admissible to show that plaintiffs performed the contract so far as defendant permitted them to do so.

3. Defendant contends that the court erred in refusing the following instruction.

"When the parties make the reduction of the agreement to writing and its signature by them a condition precedent to its completion, it will not be a contract until that is done, and this is true although all the terms of the contract have been agreed upon."

The evidence did not justify the giving of such an instruction. The court fully covered the situation as presented by the evidence. It charged the jury that before they could find that a contract was made between the parties they would have to find from a fair preponderance of the evidence that the order blank was signed by defendant or by her husband with her knowledge and consent, and that the order blank and the oral arrangements constituted an offer and an acceptance. The evidence justified the charge as given. There was no proof that the parties contemplated that all the terms were to be reduced to writing as a condition precedent to a contract. On the other hand, there was evidence from which it

could be concluded that the signing of the order blank and the oral negotiations constituted an offer and acceptance. Also, there was evidence tending to prove subsequent recognition of the contract by conduct on the part of defendant. In the case at bar, the circumstances surrounding the installation of gas for the equipment were such that no definite time for performance could be fixed. There was sufficient evidence to sustain the jury in finding that the contract was to be performed when defendant received the gas company's authorization. In Welsh v. Estate of Welsh, 148 Minn. 235, 237, 181 N. W. 356, 357, 13 A. L. R. 267, we said: "That no definite time was fixed for performance cannot be fatal to the contract."

■ Defendant contends that the trial court erred in permitting plaintiffs to amend paragraph II of the complaint by striking the words "in writing" following the word "agreement" (Record, p. 2).⁴ This amendment was discretionary with the court.

Order affirmed.

---

⁴"That on or about the 22nd day of August, 1946, plaintiffs and defendant made and entered into an agreement in writing for the sale, purchase and installation of two hot water boilers and two conversion gas burners, to be installed by plaintiffs in defendant's premises at 2427 Fourth Street, Northeast, in the city of Minneapolis, Minnesota, for an agreed contract price of $1,420.00, the reasonable market worth and value thereof, which said sum defendant agreed to pay."