[Civ. No. 11161.   Second Appellate District, Division Two.—December 30, 1936.]

RUTH MEYERS, Respondent, v. LLOYD NOLAN, Appellant.

Simon & Garbus, Abram Robert Simon and Morton Garbus for Appellant.

Laurence W. Beilenson, as *Amicus Curiae,* on Behalf of Appellant.

David Tannenbaum, George Chasin, Louis E. Swarts and Lloyd Taraday for Respondent.

Lloyd Wright and Charles E. Millikan, as *Amici Curiae,* on Behalf of Respondent.

WOOD, J.—Defendant, an actor, appeals from a judgment in the sum of $10,000 rendered in an action based upon a contract in which defendant engaged the services of plaintiff's assignors to act as his personal representatives and managers in the motion picture industry.

The contract in question is in the form of a letter directed jointly to plaintiff's assignors, Jane Broder, New York City, and Small-Landau Company, Hollywood, California. It is dated May 9, 1934, and at the bottom of the letter after the word "accepted" the two assignors signed their names. The contract provided in part as follows: "I hereby employ you to be my personal representatives and managers in, or in connection with, the motion picture industry only for a period of five (5) years from the date hereof and you accept such employment and agree to act as my representatives and managers; I agree not to employ anyone else in such capacity; you may render similar services to others beside myself and you need devote only so much of your time to my affairs as you deem necessary. You agree to use your best efforts to further my professional interests in motion pictures. In consideration of your execution of this agreement I agree to pay you jointly for your services hereunder a sum equal to ten per cent (10%) of all moneys or things of value received by me by way of salaries, compensation, bonus or otherwise, directly or indirectly, for my professional services in, or in connection with the motion picture industry, during the term hereof and thereafter for so long a time as I receive moneys or things of value under contracts or for engagements entered into during the term hereof, or on any extensions or renewals or substitutions of any such contracts or engagements. Moneys payable to you hereunder shall be due you whether such contracts or engagements are secured

through you, myself or other parties, and shall be payable to you immediately upon receipt by me.'' It is further provided that the commission payable by defendant should be divided equally between Jane Broder and Small-Landau Company; and that if defendant should fail to obtain employment during a period in excess of four consecutive months either party should have the right to terminate the contract. Defendant obtained various employments after the execution of the contract and was employed on May 31, 1935, at which time he discharged plaintiff's assignors as his personal representatives and managers.

Defendant contends that plaintiff is barred from recovery for the reason that Jane Broder did not have a license to conduct an employment agency in the state of California and cites the California law which prohibits the conduct of an employment agency in California without a license, making the violation of the law a misdemeanor. Jane Broder conducted an employment agency in the city of New York and was licensed in that city. For a long time before the execution of the contract she had acted for defendant in New York. The other assignor, Small-Landau Company, held a license in the state of California. The services of the two assignors were rendered either in New York or California. The defendant testified that at the time of entering into the contract Miss Broder stated her confidence in the Small-Landau Company and ''assured me insofar as she knew that Mr. Landau would personally take care of me out there . . . and give me every best, the very best service such as she had accorded me in New York''. There was no violation of the law on the part of either of plaintiff's assignors.

Defendant contends that the contract is lacking in certainty and mutuality and therefore unenforceable. The law does not favor the destruction of contracts because of uncertainty but will, if feasible, so construe contracts as to carry into execution the reasonable intentions of the parties if they can be ascertained. (*McIllmoil* v. *Frawley Motor Co.*, 190 Cal. 546 [213 Pac. 971].) A contract may be explained by reference to the circumstances under which it was made and the matter to which it relates. (Civ. Code, sec. 1647.) In the light of these rules we cannot say that the contract is void for uncertainty. It is a matter

of common knowledge that many actors employ managers and personal representatives and the services expected of such managers are fairly well established by the practices of the industry. The period of the contract and the compensation of the managers are definitely set forth in the contract. By accepting defendant's proposition plaintiff's assignors bound themselves to render the services called for, thereby establishing a sufficient consideration. They agreed to use their best efforts to further the professional interests of defendant in motion pictures and to act as his managers. Both parties understood the meaning of the contract. The fact that the contract provided that the managers could devote as much time to defendant's affairs as they deemed necessary does not destroy its mutuality. The very nature of the business of the parties was such that representation of other actors was to be expected. The clause was evidently inserted to avoid any misunderstanding on the subject and to more clearly define the rights and obligations of the managers.

Defendant further contends that plaintiff's assignors did not render services pursuant to the agency contract and that he was justified in discharging them. These issues were for the determination of the trial court and findings were made adversely to the contentions of the defendant. The findings are supported by the evidence.

Defendant attacks the findings of the trial court on the subject of damages sustained. Pursuant to the terms of the contract defendant was employed by Paramount Studios for approximately twenty-six weeks and was thereafter employed for several weeks at Warner Bros. Studio. On April 18, 1935, he entered into a contract of employment with Columbia Pictures Corporation for a fixed term of six months commencing May 1, 1935, at a salary of $850 per week. Under this contract Columbia Corporation had an option to employ defendant for a series of seven additional periods covering in all approximately six and one-half additional years. Salaries ranged from $850 per week for the first of the option periods and graduated up to $3,000 per week for the last of the option periods. At the date of the trial, February 6, 1936, defendant was employed by the Columbia Corporation, which had exercised its option for defendant's services for the first of the option periods. The

court found that the total sum earned by defendant during the periods from May 1, 1935, to February 6, 1936, was $23,800. The court further found that for the period from February 6, 1936, to April 30, 1942, the date of the expiration of the term of the last option of the contract with Columbia Corporation defendant may reasonably be expected to earn the sum of $595,200; and that if Columbia Corporation did not exercise its option to employ defendant he might reasonably be expected to earn between February 5, 1936, and May 8, 1939, the sum of $143,650.

Defendant contends that the evidence presented does not establish with sufficient certainty the damages sustained by plaintiff's assignors. By the terms of the contract plaintiff's assignors had a right to sue for the damages sustained, which included not only the commission on the sums actually earned but such damages as they were reasonably certain to sustain in the future. Although it is true that damages which are purely speculative, fanciful or imaginary cannot be recovered, it is also true that if the benefits claimed were reasonably certain to have been realized but for the wrongful act of the opposing party, recovery should be allowed. In *Stephany* v. *Hunt Brothers Co.*, 62 Cal. App. 638 [217 Pac. 797], the court said: "In the nature of things where performance has been prevented the proof of profits cannot be absolute, and one who breaches his contract cannot wholly escape on account of the difficulty which his own wrong has produced of devising a perfect measure of damages." In *Seymour* v. *Oelrichs*, 156 Cal. 782 [106 Pac. 88, 134 Am. St. Rep. 154], the court, in considering a question similar to the present one, said: "Yet it hardly rests with the defendants to complain of such difficulty, since it arises only through the wrongful act of defendants themselves." In *Pacific etc. Co.* v. *Alaska Packers' Assn.*, 138 Cal. 632 [72 Pac. 161], the court said: "With respect to this kind of damage, of course, there cannot be the absolute certainty possible in many plainer cases; but a wrong-doer cannot entirely escape the consequences of his unlawful acts merely on account of the difficulty of proving damages, he can do so only where there is no possibility of a reasonably proximate estimation of such damages." In *Western Union Tel. Co.* v. *Commercial Pac. C. Co.*, 177 Cal. 577 [171 Pac. 317], the court said: "The injury which it would thus suffer through the loss

of such probable profits has heretofore been held by this court to be the proper subject of admeasurement of damages in cases where the evidence disclosed a reasonable possibility of their approximate estimation.'' See, also, *Miller* v. *Lerdo Land Co.*, 52 Cal. App. 662 [199 Pac. 1073]. In *Hollywood Cleaning & P. Co.* v. *Hollywood Laundry Service*, 217 Cal. 131 [17 Pac. (2d) 712], the plaintiff sued for damages for breach of a contract in which the defendant agreed for a period of ten years to solicit dry cleaning business for plaintiff. The court held that plaintiff could recover not only damages that had accrued at the time of the trial but also the loss that would be incurred for the balance of the contract period. The court said: ''Since future damages can properly be estimated from past damages it therefore follows that the trial court's finding as to future damages finds support in the record.'' The salary actually received, together with the contract in force at the time of the trial and the prospects for the future were amply sufficient to sustain an award in the sum fixed by· the decision of the court.

Plaintiff presented expert witnesses who testified as to their opinions concerning the reasonable value of services of an actor of the character and type of defendant. It is now claimed that this testimony was erroneously admitted. The subject of the value of professional services doubtless furnishes a proper field for expert testimony. (*Lawrence* v. *Sioux City*, 172 Iowa, 320 [158 N. W. 494] ; *Meer* v. *Cerati*, 53 Cal. App. 497 [200 Pac. 501] ; *Schalich* v. *Bell*, 173 Cal. 773 [161 Pac. 983] ; *Spencer* v. *Collins*, 156 Cal. 298 [104 Pac. 320, 20 Ann. Cas. 49].) If the witnesses had given their opinions as to the benefits which might have resulted from the contract the objection would doubtless have been sustained. But such was not their testimony. The evidence was admissible on the theory that the market value of defendant's services would be helpful to the court in determining the probable future earnings of defendant.

The judgment is affirmed.

McComb, J., *pro tem.,* and Crail, P. J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 25, 1937.