[Civ. No. 11667. Second Appellate District, Division One.—January 19, 1939.]

ETHEL WILHOIT GASKINS, Respondent, v. SECURITY-FIRST NATIONAL BANK OF LOS ANGELES, as Guardian, etc., Appellant.

410

Hahn & Hahn and A. Hale Dinsmoor for Appellant.

Lester V. Peterman and Edward Brody for Respondent.

WHITE, J.—This is an appeal by defendant Security-First National Bank of Los Angeles, guardian of Louis Mathew Wooley, an incompetent person, from a judgment for plaintiff in the principal sum of $6,850 and interest thereon at seven per cent per annum until paid, for services rendered by the latter in caring for the minor children of said incom-

petent, and which judgment further subjected the assets of said incompetent's estate to the payment of the judgment.

The pertinent facts are that respondent is a sister of the incompetent, the latter of whom was on March 16, 1920, declared incompetent through appropriate proceedings instituted for that purpose in the Superior Court of Los Angeles County, and Elbert T. Wooley, father of the incompetent, was appointed guardian of his estate. The incompetent person is the father of four children, three of whom were living in the state of California in the summer of 1922, while the fourth child lived in Texas during the entire period involved in this litigation. The account current of the guardian showed a balance of some $12,000 in the estate.

At the request of Elbert T. Wooley, then guardian of his incompetent son's estate, respondent came to California from St. Louis, Missouri, September 13, 1922, and except for periods of time aggregating approximately twelve months, took care of three of the minor children of such incompetent until they either left home or attained the age of twenty-one years. In August, 1928, Elbert T. Wooley, father of the incompetent, resigned as guardian of the latter's estate, and the corporate banking predecessor of appellant herein was named guardian.

Louis Mathew Wooley, Jr., the incompetent's youngest son, attained his majority March 2, 1935. Respondent brought this action February 6, 1937, against appellant in its capacity as guardian of the incompetent's estate, alleging that her services were performed pursuant to an express agreement on the part of the guardian, Elbert Wooley, to pay her for her services, and also set up a separate count for the reasonable value of such services.

By its answer appellant bank, as the guardian, denied the existence of a contract to pay respondent for her services in looking after the minor children of said Louis Mathew Wooley, incompetent, and denied that appellant had requested her to care for said minor children pursuant to any agreement with the former guardian, Elbert T. Wooley. Also as special defenses to the complaint appellant alleged (1) that all of the funds of the estate of said incompetent which appellant had in its possession came within the provisions of the act of Congress exempting such funds from the claims of creditors, by reason of the fact that the same were paid by the United

States government to said incompetent as a disabled American World War veteran; (2) that the portion of respondent's claim for services alleged to have been rendered prior to February 6, 1935, is barred by the statute of limitations under section 339, subdivision 1, of the Code of Civil Procedure. With the issues thus framed, the cause proceeded to trial before the court, sitting without a jury, resulting in judgment for respondent as aforesaid.

The evidence shows without material conflict that in the summer of 1922 Elbert Wooley wrote respondent a letter in which he asked her to come to California and help him look after the minor children of Louis Mathew Wooley, incompetent; that this letter was lost by respondent and was not produced at the time of trial. Respondent testified that in the letter Elbert Wooley agreed to pay her the sum of fifty dollars per month and her room and board for taking care of said children. Elbert Wooley, the party writing the letter, testified that he had no recollection as to whether or not he made any promises to pay her the said sum.

Respondent testified that pursuant to such letter and the agreement therein contained, she came to California and took care of the minor children of Louis Mathew Wooley, or at least one of them, from September 13, 1922, until March 2, 1935, except for periods of time aggregating twelve months, during which time she moved away from the home where said children were living.

Respondent's testimony showed that within a month after beginning to care for said minor children, she demanded of Elbert Wooley payment for her services. Again in February, 1923, which was approximately four or five months after respondent began to care for said children, she requested payment of Elbert Wooley, and he told her to wait until the children became of age and then put in her claim for her services. When the bank was appointed guardian of the estate of Louis Mathew Wooley, incompetent, in the fall of 1928, respondent again demanded payment for her services. Respondent further testified that she demanded payment for her services every four or five months from the time that the bank was appointed guardian over Louis Mathew Wooley, incompetent.

On June 27, 1934, which was prior to the date that Louis Mathew Wooley, Jr., youngest son of Louis Mathew Wooley,

incompetent, became twenty-one years of age, respondent wrote a letter to appellant herein, notifying appellant of her agreement with Elbert Wooley, and requesting payment of a portion of the sum claimed to be owing for her services. Appellant wrote a letter to respondent in reply denying that appellant had made any arrangements to pay respondent for her alleged services and refusing to allow her claim.

■ Appellant's first ground of appeal is that the trial court erred in finding that appellant through its vice-president, as guardian of the incompetent's estate and also as guardian of the estate of the minor children of said incompetent, requested respondent to care for said minor children. In this connection, respondent testified that in October,.1928, following appellant's appointment as guardian, she had a conversation with H. H. Lehman, vice-president of the bank and in charge of a portion of appellant's trust business, in which conversation respondent detailed to Mr. Lehman the nature of the services she was performing for the incompetent's minor children, and the terms of her compensation therefor, whereupon, according to respondent, Mr. Lehman replied in part, ''Well, if it stands like that, we are just going to let it stand that way; we are not going to try to make any changes in it, we are just going to pick up where Mr. Wooley left off, try to get things straightened out, to see if we can't carry things on on a smoother basis.'' Later in respondent's testimony the following interrogatories were propounded to her and the following answers by her given:

''Q. Now, at the time Mr. Lehman at the bank stated to you that he wanted you to continue to work and care for these children, under the same terms and provisions that you were working by virtue of your agreement with Elbert Wooley, would you have continued to work and care for these children had there been no promise to pay you for those services?

''A. No.

''Q. In other words, had they not agreed to carry on this agreement, you would not have cared for the children, would you?

''A. No.''

Appellant contends that the statements attributed to its vice-president do not contain a request to respondent to do anything. With this claim we cannot agree. By his state-

ment that appellant was ''just going to let it stand that way'', certainly Mr. Lehman intended to convey to respondent that the guardian desired her to continue in the future as she had in the past. The conduct of appellant's trust officer amounted to a recognition on the part of appellant that the incompetent, notwithstanding his infirmity and lack of understanding, was nevertheless liable for the reasonable value of things furnished to him necessary for the support of his family. (Civ. Code, sec. 38.) The evidence was sufficient to support the court's finding in this regard. ▮ In any event, the ward, being bound to care for his children and the prior guardian having entered into a valid and legal contract with respondent which was then in effect for the care of the minor children, it would be immaterial whether appellant bank approved or disapproved of the terms of such contract.

▮ It is next claimed that the court fell into error in holding that subdivision 1 of section 359 of the Code of Civil Procedure did not bar recovery of compensation for services rendered by respondent prior to February 6, 1935. In support of this contention, appellant argues that there was no written contract between respondent and appellant bank, and that the latter is not bound by any written agreement, and that in any event the latter is not bound by any written agreement between respondent and Elbert Wooley, the prior guardian; and further, that where services are performed without an express agreement to pay therefor, an action to recover for such services must be commenced within two years after the accrual of the cause of action. The obligation of the incompetent father to support his minor children was a continuing duty, against which the statute of limitations did not run during the time that such children needed care and support (*Fernandez* v. *Aburrea,* 42 Cal. App. 131 [183 Pac. 366]); and in the instant case there is no showing by appellant that such need for care and support did not persist until Louis Mathew Wooley, Jr., became of age. ▮ Further, under the provisions of section 1502 of the Probate Code, every guardian of an estate must, among other things, apply the income, as far as may be necessary, to the comfortable and suitable support, maintenance and education of the ward and his family; and if the income is insufficient for that purpose, he may sell or give a deed of trust upon any of

the property, as in the Probate Code provided. ■ In the case before us, the contract was for an indefinite period, and there is abundant evidence in the record that the time for payment was agreed to be when the youngest child attained his majority. The agreement being for a term ending with the twenty-first birthday of the youngest minor son, and the action having been brought within two years thereafter, it was not barred by the statute. The mere fact that respondent at different times made demand for advances upon the total sum that would be due upon the expiration of the term of the contract does not change the provisions of the contract to the effect that payment would not be due until Louis Jr. attained his majority. (*Wax* v. *Adair*, 16 Cal. App. (2d) 393 [60 Pac. (2d) 904]; *Turell* v. *Anderson*, 16 Cal. App. (2d) 445 [60 Pac. (2d) 906].)

■ Appellant next urges that the trial court erred in holding that the compensation and the war risk insurance money received by the estate of Louis Mathew Wooley, the incompetent, from the United States of America under the provisions of the World War Veterans' Act of 1924 as amended, is not exempt from the claim of respondent for services rendered in caring for the minor children of said incompetent. It is conceded that all of the assets held by appellant as guardian of the incompetent's estate consist of funds received from the United States government under the provisions of the aforesaid act, or property purchased with such funds and the increment thereof. So far as applicable to the facts of this case, the World War Veterans' Act of 1924 provides as follows: ''Payments of benefits due or to become due shall not be assignable, and such payments made to, or on account of a beneficiary, under any laws relating to veterans . . . shall be exempt from the *claims of creditors* . . . either before or after receipt by the beneficiary.'' Citing section 3430 of the Civil Code, appellant maintains that if there is any obligation in this case existing upon the part of appellant guardian in favor of respondent, that the latter is appellant's creditor; that government allowances to an incompetent World War veteran are exempt from the claims of creditors even after the money has been received by the veteran or his guardian, and that the latter cannot waive the veteran's right to claim such exemption. (*In re Murphy's Committee*, 134 Misc. 683 [236 N. Y. Supp. 343]; *Yake* v. *Yake*,

(1936) 170 Md. 75 [183 Atl. 555] ; *Derzis* v. *Vafes,* 227 Ala. 471 [150 So. 461] ; *Wilson* v. *Sawyer,* 177 Ark. 492 [6 S. W. (2d) 825] ; *Speer* v. *Pierce,* (1934) 18 Tenn. App. 351 [77 S. W. (2d) 77].)

In *Guardianship of Giambastiani,* 1 Cal. App. (2d) 639 [37 Pac. (2d) 142], the question arose whether a claim for moneys advanced for the maintenance and support of an incompetent by his guardian *de facto* constitutes the claim of a creditor, and the court, at page 646, held : ''A claim of a *de facto* guardian for expenditures on behalf of the ward, set up in his subsequent accounting, *is not the claim of a creditor.* It is a *charge arising during administration* of the ward's affairs and estate, the same as if under a *de jure* guardianship.'' (Emphasis added.)   Further, the beneficent purpose manifested in the act of Congress is to preserve the disabled soldier's fund against imposition on the part of designing people or depletion by the soldier's own improvidence, and thereby to afford and insure continued support of persons suffering because of their military service.   That Congress has the power to so preserve these funds provided by the government for the support of disabled incompetent soldiers and their dependents is well settled, but we cannot conceive that it was the purpose of the government to prevent the probate courts in guardianship proceedings from authorizing the application of these funds to the needs of the veteran's children, even though the funds are derived from the government.   The obligation of a father to support his minor children is not a *debt* contemplated by this act of Congress, but is an obligation growing out of the parental status and public policy, the performance of which can ordinarily be compelled by imprisonment as well as judgment and writ of execution; and we cannot assume that the federal government ever intended to throw around these federal funds legal strictures that would permit or enable the beneficiaries thereof to refuse to discharge their duty to support their children.   ▆▆▆   Appellant cites us to section 1661 of the Probate Code, which is part of chapter XV of said code, entitled, ''Uniform Veterans' Guardianship Act'', wherein it is provided that a guardian shall not apply any portion of the estate of his ward for the support and maintenance of any person *other than his ward,* except upon order of the

court upon hearing had following prescribed notice to the United States Veterans' Bureau. We conclude that this section does not apply to debts or claims against the ward, of the character of the one before us. As was said in *Estate of Schluter,* 209 Cal. 286, 289 [286 Pac. 1008], with reference to moneys properly expended by a guardian on behalf of his ward:

"That it was also within the power of the court to authorize reimbursement of all sums rightfully expended by said guardian on behalf of said ward and to allow her the full amount to which equity entitles her is also plain for in the above cause" (referring to *Estate of Clanton,* 171 Cal. 381 [153 Pac. 459]) "the court further said: 'Some of the items of the account approved by the court were for expenditures without formal allowance previously made by the court. Under our liberal system, if the expenditures of the guardian have been just and equitable, they will be allowed regardless of the obtaining or failure to secure orders of the court authorizing them. "The criterion for determining whether a past maintenance should be allowed is whether a chancery court would have authorized it in advance." (*In re Beisel's Estate,* 110 Cal. 267, 276 [40 Pac. 961, 42 Pac. 819].) The same rule is declared in *Estate of Boyes,* 151 Cal. 143, 155 [90 Pac. 454].' "

■ Finally, appellant contends that the court committed error in holding that subdivision 1 of section 1624 of the Civil Code is not applicable in this case. This claim is without merit, because the trial court found upon competent evidence that the contract with the former guardian was in writing, and therefore it is not invalid by reason of the statute of frauds. When appellant bank assumed the duties of guardian, it became charged with the obligation on behalf of the ward to continue with the performance of the contract in question. ■ It could also be said that even assuming the contract with the original guardian was not in writing, its performance was not by its terms postponed beyond one year. In the case at bar the contract was to care for the minor children of the incompetent during their minority, with payment to be made when the youngest attained majority. Obviously such a contract might be fully performed in one year from the date of its execution, as, for instance, would be the case should all the minor children have died

within the first year. In 27 Corpus Juris, 184, it is said with reference to the statute of frauds:

"A parol agreement to board, or to support . . . a person during his life or other indefinite period, is regarded as having been made by the parties thereto in contemplation of the possible contingency of the person's death within the year, and, being capable of complete performance within a year, is not within the statute. The same is so of an oral contract to support a person until he reaches his majority or attains a certain age, the contingency being implied that he may die within the year. The same contingency of death being implied, an oral agreement to pay for the maintenance or education of a child is not within the statute. It has even been held that an agreement to support another for a fixed period greater than one year is not within the statute."

The judgment is affirmed.

York, P. J., and Doran, J., concurred.