[Civ. No. 16262. First Dist. Div. Two. Nov. 19, 1954.]

MANUEL A. SILVA, Respondent, v. JAMES R. MEYER, Appellant.

Gene Rhodes and J. Warren Manuel for Appellant.

Richards & Rankin for Respondent.

NOURSE, P. J.—Plaintiff was associated with defendant in defendant's real estate brokerage business, first as a licensed real estate salesman and later as a licensed real estate broker. The association was terminated on or about May 5, 1952. The action is for an amount of $14,907 allegedly due plaintiff from defendant as balance of moneys earned during this relationship over payments received. The court gave plaintiff judgment for $8,900 and defendant alone appeals.

The complaint, filed January 19, 1953, was in two counts, the first a common count for services rendered, the second on an open mutual and running account. Statements of all amounts allegedly earned by plaintiff and of all payments made to him were made part of the latter count. Among the items listed as earned were the following two:

Tract 1122—For lot sales paid directly out of
 escrow ......................$ 2,500
South Berkeley Creamery deal............. 10,000

The answer denied the material allegations of the complaint and alleged as a separate defense that at the end of their association the parties determined the amounts due or to become due plaintiff by written agreement as follows:

"I agree to pay you $100.00 per lot for 25 lots on Tract 1122, Centerville, or 28 lots, if we build homes on the additional three lots.

"I also agree to pay you $10,000.00 commission on the South Berkeley Creamery property in Centerville. This is to be paid to you at the time or before we get F.H.A. Commitments on any portion of ten acres, or if the property is put to any other use, in payments of $1,000.00 each.

"It is agreed that you have abandoned all interest in the property at 129th Avenue and Doolittle, San Leandro, which is now under litigation."

That the amount of $2,500 as to Tract 1122 had been paid; that with respect to the "South Berkeley Creamery property" no F.H.A. commitments had been received and said property had not been put to any use but that defendant had advanced plaintiff the sum of $1,400 on said commissions.

At the trial plaintiff admitted the signing of the above agreement. It further appeared from testimony of defendant heard under section 2055, Code of Civil Procedure, that at the time of the trial there were F.H.A. commitments on 9 or 10 acres and that at the time of the complaint all the tract was leased for agricultural purposes. At the end of plaintiff's case plaintiff was allowed to file a supplemental complaint under section 464, Code of Civil Procedure, to add the fact, occurred since the filing of the complaint, that defendant had obtained F.H.A. commitments on a portion of 10 acres of the South Berkeley property. It was further proved without dispute that the agreement of May 1, 1952, had been drawn up by defendant alone. Defendant testified that only $1,100 had been paid on the $10,000 South Berkeley Creamery commission, which was still owing and unpaid to Mr. Silva. Later defendant testified that this was a mistake, that he meant that the balance was unpaid but not yet due. When defendant purchased the land there was barely enough money to pay for it and Silva said, "You can pay me when you use it." The agricultural use of the land at the time of the complaint was the same as at the time of the agreement of May, 1952. It was agreed therein that plaintiff would get $1,000 whenever a portion of 10 acres was used. There had been no conversation between the parties as to what use was contemplated in the agreement. Defendant also testified that he took the South Berkeley Creamery property in the name of himself and his wife and that after January, 1953, he transferred his interest in it to a third person so that he himself had no interest in it any more.

▪ The court found in substance that the agreement of May 1, 1952, finally settled all plaintiff's claims for earned commissions; that at the time the complaint was filed the entire South Berkeley Creamery tract was put to uses other than building operations, to wit, agricultural uses; that under the agreement $8,900 was due and owing and that otherwise plaintiff's alleged claims were not true.

Appellant's first contention that said findings were outside the issues made by the pleadings is wholly without merit. Plaintiff's original complaint alleged among the earned com-

missions $2,500 for tract 1122 and $10,000 for the South Berkeley Creamery deal, adding several other transactions. Defendant's defense was in substance that it was agreed between the parties that on no other than the above named transactions any commission was due and that the amount due on the South Berkeley Creamery deal was not yet payable under said agreement. By these original pleadings the question whether the commission for the South Berkeley Creamery deal was then payable or not was squarely put in issue and all evidence relating to the period prior to the complaint of January 19, 1953, could be considered under it. The agreement of May, 1952, was provable under said allegations as showing what commission was due on the alleged transaction and at what time. At the filing of the supplemental complaint it was stated by plaintiff that it need not cover the leasing for agricultural purposes because that took place prior to the original complaint, with which proposition the trial court correctly expressed agreement.

Appellant further contends that the evidence does not support the construction given by the trial court to the agreement. He urges that the construction of the clause ''or if the property is put to any other use'' as meaning ''use other than for building purposes'' is unreasonable in the light of the fact that it was in use for other purposes than building, to wit, agricultural purposes, at the time the contract was signed, and that the meaning must be, other use than made of it at the time of the contract. However the clause quoted follows immediately after a clause relating to use for building (F.H.A. commitments), and the original language used as testified to by defendant was very general: ''You can pay me when you use it.'' Appellant's construction seems at least as unsatisfactory as the one accepted by the court because under the former respondent would never get his commission if appellant continued to lease the land for agricultural purposes.

There can be no doubt that the agreement is badly formulated and its language uncertain. The court correctly heard extrinsic evidence as to the circumstances which preceded and surrounded its execution. When such evidence has been received the question of its meaning is one of fact. (*Walsh* v. *Walsh,* 18 Cal.2d 439, 444 [116 P.2d 62].) We cannot say that the construction accepted by the trial court is without evidentiary support, considering the use of the general language stated both orally and in the final writing,

and the absence of any conversation excluding agricultural use. Moreover, if the extrinsic evidence received did not remove the uncertainty, the language had to be construed against the appellant whose drafting caused the uncertainty. (Civ. Code, § 1654; *Roy* v. *Salisbury,* 21 Cal.2d 176, 184 [130 P.2d 706].)

We are the more satisfied that the judgment should be affirmed because appellant has disposed of all interest in the property so that its use can have no further influence on his ability to pay the commission. It is irrelevant whether in disposing of the property he fulfilled the condition of putting it to use in the sense of the contract or whether he prevented the fulfillment of the condition and thereby was estopped from relying on it. Even if the disposal which took place after the original complaint, and is not mentioned in the supplemental complaint, could not be considered on the present appeal it would be decisive after reversal and remand at which time the pleadings could be amended. (*Holt* v. *Morgan,* 128 Cal.App.2d 113, 118 [274 P.2d 915].)

Judgment affirmed.

Dooling, J., and Kaufman, J., concurred.

A petition for a rehearing was denied December 17, 1954.