[Civ. No. 8535.   Third Dist.   Mar. 14, 1955.]

ETTA S. MITCHELL, Appellant, v. WILL W. TIBBETTS, as Executor, etc., Respondent.

Edward T. Koford for Appellant.

Barrett & McConnell and William H. McConnell for Respondent.

VAN DYKE, P. J.—Appellant brought this action against the respondent executor of the last will and testament of his deceased sister, Augusta T. Laughlin. The action was based on a rejected claim for the reasonable value of personal services alleged to have been performed by appellant for the decedent pursuant to an oral agreement that appellant would be compensated for such services. This appeal is from the judgment of the trial court that appellant take nothing. Appellant alleges insufficiency of the evidence to support the findings that appellant did not perform any services for the testatrix pursuant to an agreement that she would be paid therefor. Appellant claims further that the trial court erred in holding that under section 1880 of the Code of Civil Procedure appellant's husband was disqualified from testifying as to any matter or fact occurring before the death of respondent's testatrix.

Appellant and the deceased were not related nor were they members of the same household. They were, however, friends of long standing. There was uncontradicted testimony that from no later than December 9, 1944, and until October 22, 1951, on which latter date the testatrix died at the age of 82, the appellant frequently visited her, took her driving and shopping, accompanied her on business errands, assisted her in packing and moving, performed household and gardening tasks for her and often acted as a companion. There was a conflict in the evidence as to the nature and extent of such services and since there was no testimony as to an express contract for compensation it was for the trial court to determine whether these services were merely rendered gratuitously out of friendship or were so extensive and of such nature as to raise an implied contract for payment. The only testimonial evidence as to any understanding or intention of the deceased to reimburse the appellant was the testimony

of appellant's daughter concerning declarations of decedent with respect to the things which appellant had done and was doing for her. She testified that decedent told her "that she was glad that Mother was taking care of her and she didn't want to go to the hospital and didn't want any strangers around and she said she didn't know how she could repay my mother for everything that she had done for her, always mentioned that she couldn't repay her, those were her words." The witness further said, "every time that I saw her, she made some reference to it but I wouldn't be able to say what time that was, the exact conversation, I mean. That time I do remember specifically. She has mentioned how fond she was of her and that is all I can remember." She further said: "She [decedent] was glad of my mother's companionship because she was lonesome and didn't seem to have too many friends that were around her a lot." ▇ For the purpose of this appeal we may assume that since appellant was under no legal or moral duty to render any services whatsoever to her friend, the inference that both parties expected that she would be paid would be warrantable. (*Moore* v. *Spremo,* 72 Cal.App.2d 324, 330, 331 [164 P.2d 540].) ▇ On this point we quote from *Wainwright Trust Co.* v. *Kinder,* 68 Ind.App. 88 [120 N.E. 419, 420-421] :

". . . The intention to pay and the expectation of compensation may be inferred from conduct where equity and justice require compensation, . . . . . .[T]he elements of intention to pay on the one hand, and expectation of compensation on the other, must be found to exist; but such elements, like other ultimate facts, may be inferred from the relation and situation of the parties, the nature and character of the services rendered, and any other facts or circumstances which may reasonably be said to throw any light upon the question at issue."

It cannot be held, however, as a matter of law that upon this record the trial court was compelled to find the appellant had performed services for decedent under such conditions that a promise to pay must be implied. The evidence from which such inference could be drawn was most meager and if the sufficiency of the evidence to sustain the trial court's finding that there was no agreement on the part of decedent, express or implied, to pay for the services of appellant were the only issue on this appeal we would affirm the trial court's judgment.

▇ Appellant was herself obviously disqualified as a

witness and had to depend upon the testimony of others to establish her cause. We have referred to the testimony of appellant's daughter and have characterized it as meager. But appellant placed her husband upon the stand and attempted to elicit from him testimony concerning the issues, particularly those regarding the existence of an express or implied contract for compensation, extent and character of services rendered, and the like. She was met promptly with objection that since the witness was her husband and admittedly had been such from a time prior to the rendition of the services sued upon he was disqualified as a witness under subdivision 3 of section 1880 of the Code of Civil Procedure providing that the following persons cannot be witnesses:

" . . . . . . . . . . .

"3. Parties or assignors of parties to an action or proceeding, or persons in whose behalf an action or proceeding is prosecuted, against an executor or administrator upon a claim, or demand against the estate of a deceased person, as to any matter or fact occurring before the death of such deceased person."

To meet the objection there was received in evidence the following testimony of the husband:

"Q. And is Etta Mitchell your wife? A. Yes. Q. And when were you married? A. January 4, 1944. Q. Now, prior to the time of your marriage to Etta Mitchell, did you and your wife have an agreement with reference to property? A. Yes. Q. Will you tell the court just what that was? A. My wife was working at the time and we had separate bank accounts and she had two children. Q. She had two children? A. I had no children, and we agreed that anything that she earned was to be her separate property and she had her own bank account at that time. . . . Q. . . . Was that agreement that you made prior to marriage with reference to any future earnings that your wife may make? The Court: . . . Was that a written agreement? The Witness: A verbal agreement, prior to marriage, a verbal agreement. . . . Q. Since your marriage, from that day on, have you had any control over your wife's separate property? A. No."

Having gone thus far, the witness was asked if, after the date of his marriage to appellant and up until the time when decedent died, his wife had visited the home of decedent in Santa Rosa. Objection was again made that the witness was disqualified under "the dead man's statute" and the court sustained the objection. A careful examination of

the record discloses that the ruling of the court was not based upon a disbelief of the husband's testimony as being unworthy of credence when viewed in opposition to the statutory presumption that the claim sued upon, being for services of the wife during marriage, was community property. As stated by the court, the ruling was that appellant had not brought the witness within "the provisions of the *Roy* v. *Salisbury* case in 21 Cal.2d 176 [130 P.2d 706], I cite that as my authority, that is, . . . there is not evidence before this court upon which this court *could* rule that this witness had relinquished his right to the community earnings of the wife." (Italics ours.) We think the court erred in excluding the husband's testimony upon the ground stated. The witness had said flatly that he and his wife had agreed prior to marriage that during the marriage her earnings were to be separate property and had given the reasons why that agreement had been made, that is, that she had two children by a former marriage and, in effect, she wanted her earnings to be hers alone. The apparent purpose was that they were needed for the support of her children for whose support, of course, the husband-to-be would not be responsible since the children were not his. That it is competent for a husband and wife to so agree either with or without consideration had been held so frequently that the citation of a few cases so holding is sufficient. (See *Estate of Patterson*, 46 Cal.App. 415, 419-420 [189 P. 483]; *Perkins* v. *Sunset Tel. & Tel. Co.*, 155 Cal. 712, 719 [103 P. 190]; *Cullen* v. *Bisbee*, 168 Cal. 695, 697-699 [144 P. 968]; *Roy* v. *Salisbury*, 21 Cal. 2d 176, 185-186 [130 P.2d 706].) We hold that the testimony of the witness concerning the antenuptial agreement between himself and his wife as to her future earnings was sufficient if accepted by the court as truthful to qualify him as a witness on appellant's behalf concerning the transactions between herself and decedent upon which she based her action.

It is argued by respondent that appellant failed to make an offer of proof as to what her husband's testimony would be upon the issue of whether or not she was to be paid for her services to decedent and for that reason the judgment cannot be reversed for error in preventing the husband's testimony. Ordinarily the point is good, but it is not good when it is apparent from the record that an offer of proof would have availed nothing. That is the situation here. The trial court had clearly and conclusively ruled that it would not entertain any testimony on the husband's part as to any

matter or fact occurring prior to the death of the testatrix. In that situation it would have been useless to have made an offer of proof and we cannot assume on appeal that evidence material to appellant's cause of action would not have been forthcoming. (*Heimann* v. *City of Los Angeles,* 30 Cal.2d 746, 757-758 [185 P.2d 597].)

For error in excluding the testimony of appellant's husband, the judgment is reversed.

Peek, J., and Schottky, J., concurred.