Filed 12/19/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| BRIAN SPEARS,<br><br>　　　Plaintiff and Appellant,<br><br>v.<br><br>THERESE SPEARS, as Trustee, etc.,<br><br>　　　Defendant and Respondent. | A164622<br><br>(Humboldt County Super. Ct. No. PR2100106) |

　　　Brian Spears filed a petition seeking to be named as a creditor of his deceased father's trust; to remove his step-mother, Therese Spears, from her position as trustee; and for an accounting.[1]  The trial court dismissed Brian's petition on the basis that he did not file an amended pleading after the court sustained Therese's demurrer to the petition with leave to amend.  Brian appeals, contending he did file an amended pleading, reasserting only his claim to be named as a creditor of the trust.  We agree.

　　　Therese offers several alternative rationales for upholding the order of dismissal.  We agree that the statute of limitations bars recovery on one of the alleged agreements on which Brian

---

[1] Where necessary to avoid confusion, we use first names to refer to individuals who share the same last name.

1

bases his creditor's claim, but we reject Therese's arguments as to the other alleged agreement. We will therefore reverse the judgment and remand with instructions for further proceedings.

## BACKGROUND

Brian's father, James, created a revocable trust in 2018 and funded it with his separate property. The trust provides for a bequest to Brian of $1,000. The other beneficiaries of the trust are Therese's and James' other children, step-children, and grandchildren. James died in October or November 2020. It appears that no one opened a probate proceeding to administer James' estate. Upon James' death, Therese became the successor trustee.

In April 2021, Brian filed a petition to remove Therese from her position as trustee, for an accounting of the trust, and to be added as a creditor of the trust pursuant to Probate Code sections 19000, 19050, and 19150–19151.[2] Brian filed the petition from prison. Brian alleged in the petition that he had no faith that Therese would give him his bequest under the trust. As to his creditor's claim, Brian alleged that Therese owed him a total of $40,000 based on two agreements: $30,000 after Therese failed to pay Brian and his wife certain payments received from the State of California for the care of James' and Therese's granddaughter, Janaea; and $10,000 after Therese bought a modular home from Brian. Brian further alleged that Therese's

---

[2] Subsequent undesignated statutory citations are to the Probate Code.

2

debts to him and his estranged wife were community property debts and should be included in the debts of James' trust.

Therese demurred, arguing that she paid Brian his $1,000 bequest after he filed his petition, so he no longer had standing to request an accounting or to remove her. She also argued Brian could not state a claim against the trust based on Therese's personal debts. Additionally, Therese argued Brian had not described the agreements giving rise to her alleged debts with sufficient specificity.

In his opposition to Therese's demurrer, Brian argued his creditor's claim was pursuant to sections 19000, 19050, and 19150–19151 and covered by sections 18200, 19003–19005, 19008, 19040, 19053, and 19100. Brian also moved to strike the demurrer because he alleged Therese had falsely represented that she paid Brian his bequest before filing the demurrer when in reality she paid it afterwards.

At the hearing, Brian conceded that he had received his $1,000 bequest and only contested Therese's demurrer as to his creditor's claim. Therese argued that Brian needed to plead the creditor claim with more specificity, to make clear when the debts were incurred and that the alleged debts were chargeable to James. The trial court denied Brian's motion to strike and sustained Therese's demurrer with leave to amend as to his creditor claim.

A couple months later, Brian filed a document titled "Creditor's Claim," using the same case number that was assigned to his original petition. Brian again asserted the claim

was pursuant to sections 19000 and 19150–19151. Brian's creditor's claim rested on the same two oral agreements alleged in his original petition, although he alleged slightly different amounts owed than alleged in the original petition. As to the first agreement, he alleged that James and Therese received $60,000 from the State of California for the care of Janaea Spears—money that was intended for Brian and his estranged wife. On January 15, 2012, James orally promised to repay the money that was due in periodic payments and that if he died before paying off the debt, the debt would become due and payable in full.

Regarding the second alleged agreement, Brian alleged that sometime in 1996 or 1997, he made an oral agreement with James and Therese to sell them a modular home. James and Therese agreed to pay Brian and his wife $30,000 in monthly payments of $300. James agreed that if he died before paying the entire debt, the debt would become due and payable in full.[3]

Therese filed an objection to Brian's creditor's claim. She never argued that Brian's claim was not an amended petition. Instead, she argued the trial court should reject Brian's petition because he needed to file his claim against James' estate, not the trust, and his claims were barred by the statute of limitations and statute of frauds. Brian filed a written reply.

---

[3] Brian asserted that he and his estranged wife were each entitled to half the total of $90,000 owed on the two alleged debts, or $45,000.

At a hearing, Brian for first time argued that section 850 permitted his claim. The trial court took the matter under submission to consider section 850. The trial court sustained Therese's demurrer with leave to amend and then dismissed the matter with prejudice on February 14, 2022, after Brian declined to file an amended petition.

## DISCUSSION

### I. Jurisdiction

Before turning to the merits of the case, we must first establish that we have jurisdiction over the appeal. Brian is appealing from the trial court's February 14, 2022, order of dismissal. The trial court did not previously announce its intended decision. The trial court clerk served a notice of entry of the order on Brian on February 16, 2022. Pursuant to California Rules of Court, rule 8.104(a)(1)(A), Brian had 60 days from February 16, 2022, to file his notice of appeal.

According to the clerk's transcript that the trial court provided, Brian filed his notice of appeal on January 31, 2022. When a notice of appeal is filed before a trial court announces its intended decision, renders judgment, or enters judgment, like Brian's was here, the notice of appeal is not timely and the appeal must be dismissed. (*Silver v. Pacific American Fish Co., Inc.* (2010) 190 Cal.App.4th 688, 691; *First American Title Co. v. Mirzaian* (2003) 108 Cal.App.4th 956, 960; see Cal. Rules of Court, rule 8.104(d).)

We requested supplemental briefing from the parties to address whether we should dismiss Brian's appeal because of the

5

premature notice of appeal.  In response, Brian informed us that after he received a notice of the trial court's ruling, he submitted a second notice of appeal to the trial court.  Brian also filed requests for us to judicially notice or augment the record to include a letter to him from the trial court's appellate clerk, stating, "The Court received your premature (CRC 8.104(d)) Notice of Appeal on January 31, 2022.  Once the judge made a ruling on February 14, 2022, then your appeal was filed.  There is no need to keep filing and appeal for the same cause of action."[4] Together with this letter, the trial court returned Brian's second notice of appeal, unfiled.

Brian argues under these circumstances we should not dismiss his appeal.  We agree.  He presents several different rationales, but the most straightforward one is the correct one. Because Brian's initial notice of appeal was premature and invalid, the trial court clerk was legally obligated to file his second notice of appeal.   Brian's second notice of appeal was mailed on February 27, 2022.  The clerk received it, since the clerk responded to it by letter and mailed it back.  We therefore deem the second notice of appeal timely filed.  (*Lezama-Carino v. Miller* (2007) 149 Cal.App.4th 55, 58–59 [when clerk of court erroneously failed to file document, Court of Appeal deemed the document filed on the day received by the clerk]; *Rapp v. Golden*

---

[4] We grant Brian's unopposed request for judicial notice of this letter and otherwise deny his request for judicial notice. (*People v. Malone* (1988) 47 Cal.3d 1, 35, fn. 12 [judicially noticing letter from trial court clerk].)  We deny his request to augment the record.

*Eagle Ins. Co.* (1994) 24 Cal.App.4th 1167, 1172 [same]; see also Cal. Rules of Court, rule 8.25(b)(5) [if envelope shows document was mailed or inmate delivered document to custodial officials for mailing within the period for filing the document, document is deemed timely filed even if clerk receives it late].)

## II. Amended Pleading

Brian contends the trial court erred in dismissing his case for failing to file an amended petition after Therese's demurrer. We agree.

Code of Civil Procedure section 581, subdivision (f)(2) provides that a court "may dismiss the complaint as to th[e] defendant . . . [¶] . . . [¶] . . . after a demurrer to the complaint is sustained with leave to amend, the plaintiff fails to amend it within the time allowed by the court and either party moves for dismissal." (*Cano v. Glover* (2006) 143 Cal.App.4th 326, 329–330 [dismissal for failure to amend following order sustaining demurrer must be with prejudice].) When the trial court sustained Therese's demurrer to Brian's original pleading, it granted him leave to amend his complaint to plead his creditor claim with more specificity.[5] Brian conceded he no longer had standing to file a petition to remove Therese as trustee of the

---

[5] Brian contends the trial court should have granted his motion to strike Therese's demurrer because it and declarations filed in support of it contained false information. This argument has no merit. The grounds for a motion to strike any false or improper matter inserted in a pleading must appear on the face of the pleading or from judicially noticeable material. (Code Civ. Proc., §§ 436–437.) Brian's motion to strike relied on his own declaration, so the trial court properly denied it.

trust or for an accounting. Brian then filed a document titled "Creditor's Claim" on Judicial Council Form DE-172, together with a notice of creditor's claim and a declaration in support of the claim. These documents provided additional specificity regarding the oral agreements on which he based his claim to be a creditor of the trust, plainly aimed at remedying the defects the trial court found in his original claim. He filed these documents under the same case number as his original complaint. Giving these documents a reasonable interpretation, the creditor's claim was intended to be Brian's amended pleading, given that Brian was abandoning his claims for an accounting and removal of Therese as trustee and proceeding solely on his creditor's claim. (*Mathews v. Becerra* (2019) 8 Cal.5th 756, 768 [when reviewing a demurrer ruling, " ' " 'we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context' " ' "].)

In urging us to uphold the trial court's order, Therese argues that the creditor's claim was not an amended petition to be added as a creditor of the trust because it was titled as a creditor's claim and Brian cited sections 9150–9154 in his briefing in the trial court. Brian's use of Form DE-172 and invocation of sections 9150 to 9154 and 9250 in his reply to Therese's objection were somewhat confusing, since the form and those statutes are for use when making claims against a probate estate. But Brian's legal theory was in flux throughout the trial court proceedings, between invoking sections 19000 and 19150–19151 in his declaration in support of the creditor's claim, as he

8

had in his original petition, and raising section 850 at the hearing. Regardless of the validity of any of these legal theories, which we discuss *post*, Brian was unambiguously attempting to address the factual deficiencies the trial court identified in its ruling on Therese's demurrer to Brian's original petition. Brian's creditor's claim set forth the same factual allegations, with additional detail, as he had alleged in the portion of his original pleading in which he asked to be added as a creditor of the trust. It would elevate form over substance to dismiss Brian's claim on the basis that it was not an amended pleading because he used the incorrect form, and Therese cites no authority supporting such a result. There is no indication that Therese was confused or misled about the relationship between Brian's original petition and his creditor's claim or Brian's intent that the creditor's claim constitute his amended pleading.

## III.   Alternative rationales for the trial court's order

As is permissible, Therese offers several alternative rationales for affirming the trial court's order of dismissal. (*Economic Empowerment Foundation v. Quackenbush* (1997) 57 Cal.App.4th 677, 692, fn. 13 [affirming dismissal on different rationale than trial court; "our review extends to results not reasons"].) While one of Therese's arguments bars recovery on one of the alleged agreements underlying Brian's creditor's claim, none of her contentions supports dismissal of Brian's entire claim.

9

## A. *Viability of recovery from the trust*

Therese first argues that Brian needed to bring an action against James' estate, not the trust. Therese's general contention is that when a trustee does not pursue the optional procedure in sections 19000–19403 (section 19000 procedure) to set an early date to cut off creditor claims against trust assets based on the settlor's debts, a party with a claim against the settlor of a trust must first file an action and obtain a judgment against the personal representative of the settlor's estate. Only if the estate is insufficient to pay the claim may the claimant then seek to satisfy the judgment from assets of the settlor's trust. Because Therese never pursued the section 19000 procedure and Brian did not file a claim against James' estate within the one-year statute of limitations after his death, she argues Brian's claim is now time-barred.

Therese's description of the procedure in the absence of the optional cut-off procedure in sections 19000–19403 would be correct if anyone had opened a probate estate for James after his death. In such circumstances, a creditor of the deceased must first file a claim in the probate proceeding in order to recover. (§§ 9002, 9351; see *Arluk Medical Center Industrial Group, Inc. v. Dobler* (2004) 116 Cal.App.4th 1324, 1334 (*Arluk*).)

However, a different procedure applies when the trustee has not followed the optional section 19000 procedure and no probate proceedings have been opened. Section 19400 states, "Subject to Section 366.2 of the Code of Civil Procedure, if there is no proceeding to administer the probate estate of the deceased

10

settlor, and if the trustee does not file a proposed notice to creditors pursuant to Section 19003 and does not publish notice to creditors pursuant to Chapter 3 (commencing with Section 19040), then a beneficiary of the trust to whom payment, delivery, or transfer of the deceased settlor's property is made pursuant to the terms of the trust is personally liable, to the extent provided in Section 19402, for the unsecured claims of the creditors of the deceased settlor's probate estate." Section 19402 in turn establishes that a beneficiary is personally liable "only to the extent the claim of the creditor cannot be satisfied out of the trust estate of the deceased settlor" and up to the amount of the beneficiary's distribution. (§ 19402, subd. (b).) Brian states in his briefing here that James' estate was insolvent because James transferred all of his assets into the trust, which we treat as an offer that he can amend his pleading to allege the insolvency of James' estate. Leaving aside the application of the one-year statute of limitations in section 366.2 of the Code of Civil Procedure, which we discuss *post*, taken together, these statutes allow Brian to assert a claim against Therese as trustee and seek to recover from the assets of the trust, as section 19402, subdivision (b) implicitly requires a creditor in these circumstances to seek relief against the trust before pursuing any trust beneficiary. (§ 19402, subd. (b) [beneficiary of trust may be liable "only to the extent the claim of the creditor cannot be satisfied out of the trust estate"].)

Therese's argument that Brian must proceed first against James' estate relies on two main authorities. First is Code of

11

Civil Procedure section 377.40, which states that, subject to the requirements for asserting creditor claims against a decedent's estate once probate has been opened, "a cause of action against a decedent that survives may be asserted against the decedent's personal representative or, to the extent provided by statute, against the decedent's successor in interest." Code of Civil Procedure section 377.40 allows a creditor to pursue a cause of action against the personal representative *or* other successor in interest, indicating that claims against a decedent may be asserted if a probate proceeding has not been opened. Code of Civil Procedure section 377.11's definition of a successor in interest includes a successor in interest to a cause of action or item of property. Sections 19400 and 19402 establish that the trustee and trust beneficiaries are the decedent's successors in interest to trust property for the purposes of claims when there is no personal representative. Code of Civil Procedure section 377.40 is therefore consistent with sections 19400 and 19402.

Second, Therese cites *Arluk*, which stated, "If there is no proceeding to administer the decedent's estate and the trustee elects not to file a proposed notice to creditors pursuant to the optional trust claims procedure [under sections 19000–19403], then a beneficiary to whom property is distributed is personally liable for any unsatisfied judgment obtained by a creditor against the decedent settlor's estate . . . ." (*Arluk*, *supra*, 116 Cal.App.4th at p. 1333.) This statement is self-contradictory. If there is no probate proceeding to administer the decedent's estate, it is impossible for the creditor to obtain a judgment

12

against the settlor's estate. *Arluk* also ignores section 19402 and its implicit requirement that a creditor must first proceed against the assets of a trust before seeking recovery from trust beneficiaries who received distributions. (§ 19402, subd. (b).) In any event, in *Arluk*, a probate proceeding was opened for the settlor's estate and the creditor obtained a judgment against the estate. (*Arluk, supra,* 116 Cal.App.4th at pp. 1329–1330.) *Arluk*'s comment about what happens when there is no proceeding to administer an estate is therefore dicta.

There remains the question of the appropriate vehicle for Brian's claim. We agree with Therese that the statutes Brian raised in his original petition, creditor's claim, and reply in support of his claim were inapplicable. Sections 19000–19403 govern the optional procedure trustees can invoke to cut off claims against trust assets, while sections 9150–9154 concern the procedure for asserting claims against an estate. However, Brian had two methods available him through which to assert his claims. "If there is no probate administration and the trust claims procedure is not initiated, the creditor may file suit against the trustee to enforce a debt, claim, or action against the deceased settlor. . . . [¶] Alternatively, a creditor of the deceased settlor or a person who claims that the trustee is in possession of real or personal property belonging to the claimant may file a petition under [Probate Code] §850(a)(3)(A) or (C)." (Cal. Trust and Probate Litigation (Cont.Ed.Bar 2023) § 22.51; accord, Ross et al., Cal. Practice Guide: Probate (The Rutter Group 2023) ¶2:116.15.) At the hearing, Brian raised section 850 as authority

13

for his claim against Therese as trustee.  The trial court therefore could not have dismissed Brian's creditor's claim for failure to raise any viable legal avenue of relief.

### B.    *Statute of limitations*

Therese also contends the trial court's order of dismissal may be affirmed because Brian's claims based on the two alleged oral agreements are barred by the statute of limitations.  We agree as to one of the agreements but disagree as to the other.

Therese's argument relies on the allegations in Brian's claim, so we treat it as equivalent to a demurrer.  " ' "A demurrer based on a statute of limitations will not lie where the action may be, but is not necessarily, barred.  [Citation.]  In order for the bar . . . to be raised by demurrer, the defect must clearly and affirmatively appear on the face of the complaint; it is not enough that the complaint shows that the action may be barred." ' " (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42.)

Code of Civil Procedure section 366.2, subdivision (a) states, "If a person against whom an action may be brought on a liability of the person, whether arising in contract, tort, or otherwise, and whether accrued or not accrued, dies before the expiration of the applicable limitations period, and the cause of action survives, an action may be commenced within one year after the date of death, and the limitations period that would have been applicable does not apply."  Brian filed his original petition within one year of James' death, and as discussed *ante,* the creditor's claim was an amended version of the claim in the

14

original petition, so his claim is timely if the limitations period had not expired before James died. Therese implicitly accepts this, since she argues Brian's claims are barred by the two-year statute of limitations in Code of Civil Procedure section 339 for oral contracts.

Therese is correct that a two-year period governs. (Code Civ. Proc., § 339; *Lucioni v. Bank of America, N.A.* (2016) 3 Cal.App.5th 150, 164.) A cause of action for breach of a contract generally accrues upon the alleged breach. (*Piedmont Capital Management, L.L.C. v. McElfish* (2023) 94 Cal.App.5th 961, 968 (*McElfish*).) If a contract calls for a party's performance on separate occasions such that the contractual duties are divisible, each breach triggers a separate limitations period. (*Id.* at pp. 968–969.) To determine whether breach of an agreement to repay a debt gives rise to one or multiple limitations periods, a court must first examine whether the contract requires periodic payments. (*Id.* at p. 971.) If it does, then the court must then "determine whether or not the duty to make a monthly payment is divisible from the duty to pay the full amount of the debt." (*Ibid.*)

Brian alleged two oral agreements with James. First is the alleged January 15, 2012, agreement to repay the $60,000 due to Brian and his wife from the State. Therese argues the statute of limitations ran two years later, since Brian alleges James never made any payments. But Brian's pleading does not disclose enough details about the agreement to determine how to apply the two-year statute of limitations. James' payments were

15

intended to be periodic. This, together with the fact that the only alleged acceleration clause concerned James' death, creates a possibility that the periodic payments were intended to be divisible from the overall obligation to repay the debt, thus triggering separate limitations periods for each payment. (See *McElfish*, *supra*, 94 Cal.App.5th at pp. 969–970 [payment obligation was divisible and each payment created separate limitations periods where duty to pay full amount was divisible from periodic payments and clause for acceleration of debt upon missed payment was discretionary].) Brian's pleading does not indicate how many payments James was obligated to make or specify the amount of the payments from which one could calculate the number of required payments or the date when the last payment was due. The agreement was made over ten years ago, but we cannot infer from that fact alone that the debt was intended to be repaid more than two years prior to James' death so that all applicable limitations periods would have expired before he died. The trial court therefore could not have dismissed this aspect of Brian's claim based on the statute of limitations.

The second oral agreement concerned James' and Therese's purchase of a modular home from Brian for $30,000. James allegedly agreed to pay the $30,000 in $300 installments and made two payments before defaulting. This indicates the contract was for 100 monthly payments, or 8 years and 4 months. Brian variously alleges the agreement was formed on October 12, 1996, or "[i]n 1997." Regardless of which date is correct, the two-year statute of limitations for an action based on the breach of

16

even the last monthly payment expired long before James' death in late 2020. The trial court therefore could have sustained Therese's objection as to Brian's claim based on this agreement.

Brian's allegations apparently aimed at saving this claim from the statute of limitations are insufficient. He alleges that he and James agreed that if James did not pay the debt during his lifetime, the debt would be due and payable in full upon his death. This appears to be merely a restatement of the law governing contractual obligations of decedents. (Code Civ. Proc., § 377.20 ["a cause of action . . . against a person is not lost by reason of the person's death, but survives subject to the applicable limitations period"].) There is no apparent reason why such a provision would insulate Brian's claim against the running of the statute of limitations after James failed to make the required payments during his lifetime. Brian further alleges that he and James amended their oral agreement in 2008 with James reassuring Brian that the debt would be paid. Such an agreement to relieve Brian from the statute of limitations had to be in writing, so the oral amendment was ineffective. (Code Civ. Proc., §§ 360, 360.5.) Moreover, the amendment took place in 2008, so even if that oral agreement restarted the limitations period, it still expired long before James' death.

On appeal, Brian repeatedly argues that statute of limitations issues were beyond the scope of the hearing after which the trial court dismissed his claim and are therefore outside the scope of this appeal. He asserts the hearing was on calendar only as a status conference and he never had an

17

opportunity to present argument, written or oral, regarding Therese's objections to his claim.

Brian is correct that the purpose of the hearing changed, since the trial court initially set it only as a status conference. But Brian forfeited any right he may have had to additional notice. He did not object at the hearing to the trial court's consideration of Therese's arguments. He told the court that he had had limited time to perform legal research because of conditions in prison, but he never requested a continuance or told the court that he needed more time to respond. Moreover, Brian was not prejudiced by any lack of notice. Therese filed written objections in advance of the hearing, in which she raised the same arguments she raises here, sometimes verbatim. Brian had an opportunity to respond to those arguments, since he filed a written reply, including a response to her statute of limitations argument. He also opposed Therese's arguments at the hearing, raising for the first time the section 850 theory of relief that we found persuasive *ante*. Under these circumstances, the trial court did not err in considering Therese's alternative theories. (*Felisilda v. FCA US LLC* (2020) 53 Cal.App.5th 486, 493 [no prejudice from lack of notice where party prepared written opposition and further developed argument at hearing; "the right to notice is to be apprised of the salient issue and to have the opportunity to prepare adequately for a hearing," and that purpose was met].) Therese's alternative theories are also within the scope of this appeal, given the rule that we must affirm the

trial court's decision if it is correct on any theory that Therese raised below.

Brian also asserts that he pleaded a quantum meruit claim and that a quantum meruit claim permits recovery even after the death of the decedent. Brian pled a breach of oral contract claim, not a quantum meruit claim. (*Hedging Concepts, Inc. v. First Alliance Mortgage Co.* (1996) 41 Cal.App.4th 1410, 1419–1420 [quantum meruit claim consists of an agreement implied by law for reasons of justice where the parties did not form an actual agreement].) Even if he had alleged a quantum meruit claim, it would not matter. Quantum meruit claims are governed by the two-year statute of limitations in section 339 of the Code of Civil Procedure, just like actions for breach of oral contracts, so the ultimate analysis is the same. (*Leighton v. Forster* (2017) 8 Cal.App.5th 467, 490.)

Brian's final response is that he should be granted leave to amend given the liberal policy favoring amendment of pleadings at any stage. On appeal from a dismissal following an order sustaining a demurrer without leave to amend, we must decide whether there is a reasonable possibility that a claim can be amended to address a pleading defect. (*LeBrun v. CBS Television Studios, Inc.* (2021) 68 Cal.App.5th 199, 212.) We would be willing to give Brian an opportunity to amend his claim against the trust, but Brian does not identify any specific allegation he could make that would rescue this aspect of his creditor's claim from the statute of limitations. He says only that he could have offered a supplemental amendment if the trial court had

19

dismissed it on any other grounds besides failure to file an amended petition.  This is insufficient.  (*Ibid.* [plaintiff has the burden of showing a reasonable possibility that defect in complaint can be cured by amendment].)

## C.   *Statute of frauds*

Finally, Therese contends the trial court properly dismissed Brian's claim because it rests on oral contracts that violate the statute of frauds.  We disagree.

Therese contends the oral agreements come within the statute of frauds because James promised that both debts would be due in full upon his death.  Civil Code section 1624, subdivision (a)(5) provides that "[a]n agreement that by its terms is not to be performed during the lifetime of the promisor" is "invalid" unless it, "or some note or memorandum thereof, [is] in writing and subscribed by the party to be charged or by the party's agent."  A mere possibility that a contract will not be performed within the lifetime of the promisor is insufficient; "[i]f the terms of a contract are such that it admits of performance during the lifetime of the promisor, it is not within the statutory provision here involved."  (*Roy v. Salisbury* (1942) 21 Cal.2d 176, 182.)  Brian does not allege that James was prohibited from paying either debt before his death or that the agreements otherwise foreclosed the possibility that James could have fully performed them during his lifetime.  The mere possibility of payment after James' death is insufficient to make the oral agreements subject to the statute of frauds.

20

In sum, the trial court erred in dismissing Brian's creditor's claim in full. Although Brian's creditor's claim is barred by the statute of limitations insofar as it rests on James' and Therese's alleged oral agreement to purchase a modular home, the trial court erred in dismissing Brian's creditor's claim to the extent it rests on James' and Therese's alleged agreement to pay to Brian and his estranged wife $60,000 received from the State.

## DISPOSITION

The trial court's order is reversed. The matter is remanded for further proceedings not inconsistent with this opinion.


BROWN, P. J.


WE CONCUR:

GOLDMAN, J.
HIRAMOTO, J.*


*Spears v. Spears* (A164622)

---

* Judge of the Superior Court of California, County of Contra Costa, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

21

Trial Court:      Humboldt County Superior Court

Trial Judge:      Hon. Kelly L. Neel

Counsel:          Brian Spears, in pro per., for Plaintiff and
                  Appellant.

                  The Harland Law Firm, John S. Lopez for
                  Defendant and Respondent.